```
┌─ FILED          ┌─ RECEIVED
└─ ENTERED        └─ SERVED ON
         COUNSEL/PARTIES OF RECORD

        AUG 1 3 2021

     CLERK US DISTRICT COURT
      DISTRICT OF NEVADA
BY:                      DEPUTY
```

1  MICHELLE D. ALARIE, ESQ. (NV 11894)
   ARMSTRONG TEASDALE LLP
2  3770 Howard Hughes Parkway, Suite 200
   Las Vegas, Nevada 89169
3  Telephone:  702.678.5070
   Facsimile:  702.878.9995
4  malarie@atllp.com

5  Glennys Ortega Rubin, Esq. (FL 0556361), LR IA 11-2 petition forthcoming
6  B. Travis Brown, Esq. (FL 1011618), LR IA 11-2 petition forthcoming
   SHUTTS & BOWEN, LLP
7  300 S. Orange Ave., Ste. 1600
   Orlando, Florida 32801
8  Telephone:  407-835-6755
   Facsimile:  408-849-7255
9  grubin@shutts.com
   tbrown@shutts.com
10

11 *Attorneys for Defendant Wyndham Vacation Ownership, Inc., Wyndham Vacation Resorts, Inc.,*
   *Wyndham Resort Development Corporation, Shell Vacations, LLC, SVC-West, LLC, SVC-*
12 *Americana, LLC, and SVC-Hawaii, LLC*

13                       **UNITED STATES DISTRICT COURT**

14                            **DISTRICT OF NEVADA**

15 WYNDHAM VACATION OWNERSHIP,            Case No.:    2:21-ms-00057
   INC., WYNDHAM VACATION RESORTS,
16 INC., WYNDHAM RESORT                   (Underlying Civil Action: 6:19-cv-00476-
17 DEVELOPMENT CORPORATION, SHELL         GAP-EJK; United States District Court for
   VACATIONS, LLC, SVC-WEST, LLC, SVC-    the Middle District of Florida)
18 AMERICANA, LLC, and SVC-HAWAII,
   LLC,
19                 Plaintiffs,

20        v.                              **PLAINTIFFS' MOTION TO COMPEL**
                                          **THIRD-PARTY PAULINO T. BONDS,**
21 CHARLES E. GALLAGHER, ESQ.,            **SR. TO COMPLY WITH SUBPOENA**
   WILLIAM P. STEWART, JR. a/k/a PAUL
22 STEWART a/k/a BILL STEWART,
   GALLAGHER-CLIFTON, LLC,
23 TIMESHARE OWNERS RELIEF, LLC f/k/a
   TIMESHARE SOLUTIONS, LLC, RESORT
24 LEGAL TEAM, INC., ALLEVIATE
   CONSULTING, LLC f/k/a TIMESHARE
25 LIQUIDATION SOLUTIONS, LLC,
   CLAYTON ANTHONY GONZALEZ,
26 TRADEBLOC, INC., LISA TREVINO, and
   ALBERT TREVINO,
27
                   Defendants.
28

                                        1

1    Plaintiffs, Wyndham Vacation Ownership, Inc., Wyndham Vacation Resorts, Inc., Wyndham

2    Resort Development Corporation, Shell Vacations, LLC, SVC-West, LLC, SVC-Americana, LLC,

3    and SVC-Hawaii, LLC (collectively "Wyndham"), respectfully move this Court, pursuant to Federal

4    Rules of Civil Procedure 37 and 45, to compel third-party Paulino T. Bonds, Sr. ("Bonds") to comply

5    with a duly issued Subpoena to appear for a deposition, which was issued out of the United States

6    District Court for the Middle District of Florida, Case No. 6:19-cv-00476-GAP-EJK (the "Florida

7    Lawsuit"").

8    In compliance with the Local Rule IA 11-2, Glennys Ortega Rubin and B. Travis Brown, out-

9    of-state counsel for Wyndham in the Florida Lawsuit will be filing Verified Petitions for Permission

10   to Practice in This Case Only by Attorney Not Admitted to the Bar of This Court and Designation of

11   Local Counsel within the time permitted to do so.

12   Certification pursuant to Local Rule 26-6:  As set forth in the Declaration of Glennys Ortega

13   Rubin, attached hereto as **Exhibit "A"**, counsel for Wyndham certifies that they have attempted in

14   good faith to confer with Bonds regarding the Subpoena and this Motion to Compel, but have

15   received no response.  Counsel will update this Certification if circumstances change.

16   ## MEMORANDUM OF POINTS AND AUTHORITIES

17   ## I.    INTRODUCTION

18   Wyndham's Motion to Compel relates to an action pending in the United States District Court

19   for the Middle District of Florida, *Wyndham Vacation Ownership, Inc., et al. v. Charles E.*

20   *Gallagher, Esq., et al.*, 6:19-cv-00476-GAP (the "Florida Lawsuit"). Wyndham filed suit against

21   Charles E. Gallagher, William P. Stewart, Jr., Gallagher-Clifton, LLC, Timeshare Owners Relief,

22   LLC, Resort Legal Team, LLC, Alleviate Consulting, LLC, Clayton Anthony Gonzalez, Tradebloc,

23   Inc., Lisa Trevino, and Albert Trevino (collectively "Defendants") because they were engaging in

24   unlawful business practices involving a timeshare exit scheme whereby the Defendants work in

25   concert to convince timeshare owners to breach their valid contracts with Wyndham. *See* Ex. A, G.

26   Rubin Decl., at ¶ 2. Wyndham's Complaint in the Florida Lawsuit seeks damages and injunctive

27   relief as a result of Defendants' false advertising in violation of the Lanham Act, tortious interference

28   with contractual relations, and deceptive and unfair trade practices in violation of Florida's Deceptive

1  and Unfair Trade Practices Act. *See id.* at ¶ 2; *see also,* Florida Lawsuit Complaint, attached to G.

2  Rubin Declaration at **Exhibit "1."**

3          In the course of litigation in the Florida Lawsuit, Wyndham uncovered evidence

4  demonstrating that Bonds is intricately involved in the timeshare exit scheme that is the subject of the

5  Florida Lawsuit. *See* Ex. A, G. Rubin Decl., at ¶ 4. In fact, Wyndham has reason to believe that

6  Bonds may be the ultimate mastermind of the timeshare exit scheme, including the portion that ties in

7  through Gallagher. *Id.* Wyndham has not been able to garner the necessary discovery through the

8  litigants in this case and attendant to what may be a critical aspect to this ongoing litigation. *Id.* at ¶ 5.

9  Therefore, Wyndham is limited to third-party discovery to gather information about the timeshare

10  exit scheme at issue here, and Bonds' role. *Id.*

11          On June 9, 2021, Wyndham issued a subpoena to Bonds requiring Bonds to appear for a

12  deposition on June 25, 2021, via remote videoconference. Bonds failed to appear for this deposition.

13  To date, Bonds has not served any written objections, which are now waived, and did not file a

14  motion to quash the subpoena or a motion for protective order asking for the deposition to be

15  eliminated or limited. Accordingly, Wyndham requests that the Court enter an order compelling

16  Bonds to comply, holding Bonds in contempt, and awarding Wyndham its expenses, including

17  attorneys' fees and costs, associated with bringing this Motion.

18  **II.    FACTS**

19          Through discovery in the Florida Lawsuit, Wyndham learned that Bonds was participating in,

20  and intertwined with the timeshare exit scheme at the heart of this case. *Id.* at ¶ 4. To date, Wyndham

21  has discovered that Bonds is acting in concert with other Defendants in this case, that work in tandem

22  to defraud Wyndham Owners and Wyndham itself. *Id.* Therefore, Bonds possesses relevant

23  information related to the overarching timeshare exit scheme in this case.

24          Wyndham has repeatedly sought to obtain this information from other sources, including

25  party Defendants, but has been unsuccessful. Despite multiple discovery motions filed in the Middle

26  District of Florida, the party Defendants have been unwilling to produce relevant documentary

27  information regarding Bonds. Wyndham is therefore left to seek information about Bonds'

28  involvement with this timeshare exit scheme from Bonds himself.

Accordingly, on June 9, 2021, Wyndham's counsel issued, pursuant to Rule 45 of the Federal Rules of Civil Procedure, the Bonds Subpoena requiring Bonds to submit to a deposition on June 25, 2021. *Id.* at ¶ 6; *see also,* Paulino T. Bonds Subpoena, attached to G. Rubin Declaration at **Exhibit "2."**. On June 12, 2021, the Bonds Subpoena was served on Bonds' wife, who accepted process on behalf of her husband, in Las Vegas, Nevada. *Id.* at ¶ 7. Upon information and belief, Bonds is a resident of Las Vegas, Nevada. *Id.* The subpoena allowed Bonds to appear remotely at a location of his choosing or appear at a rented conference room in Las Vegas for his deposition. *Id.* at ¶ 6.

Counsel for Wyndham attempted at least five (5) times to communicate with Bonds regarding his deposition between the time Bonds was served with the subpoena and the day of the deposition. *Id.* at ¶¶ 8–9. Counsel sent three e-mails and made two telephone calls, leaving two voice messages. *Id.* at ¶ 9. No response was ever received to any of these communications. *Id.* at ¶¶ 9, 11. Counsel has subsequently attempted to communicate with Bonds, to no avail. *Id.* at ¶ 11.

Bonds did not appear for his deposition on June 25. *Id.* at ¶ 10. To date, Bonds has not appeared for his deposition, nor has he attempted to reset his deposition on a date convenient for him. *Id.* Because Wyndham is entitled to Bonds' deposition, as required by the Subpoena, Wyndham filed this Motion to Compel.

## III.    ARGUMENT

### A.    THE COURT SHOULD COMPEL BONDS TO COMPLY WITH THE SUBPOENA

Rule 30 of the Federal Rules of Civil Procedure authorizes parties in civil actions to "depose any person," including the use of civil subpoenas to compel such deponent's attendance. Fed. R. Civ. P. 30(a)(1). If a non-party fails to appear for his or her deposition, the United States District Court for the district where compliance is required may enter an order compelling the non-party to appear for such deposition. *See* Fed. R. Civ. P. 37(a)(1); *Security Life Ins. Co. of Am. v. Duncanson & Holt, Inc.,* 11 Fed. App'x 926, 927 (9th Cir. 2001) (affirming sanctions against non-party for failure to comply with subpoena). As detailed herein, the Court should compel Bonds to comply with the Subpoena.

1

**1.     The Bonds Subpoena is Valid and Was Properly Served.**

In accordance with Rule 45(a), the Bonds Subpoena was issued from the United States District Court for the Middle District of Florida, where this action is pending. There is no dispute that the Subpoena satisfies the form and content requirements of Rule 45(a) and that the Subpoena was properly served on Bonds, which was left at his usual place of abode with his wife. *Kelly v. Hickman*, 2021 WL 3361701, at *2 (D. Nev. Mar. 31, 2021) (nonparty's failure to object to subpoena served by U.S. Mail waives any objections as to service); *Cardinali v. Plusfour, Inc.*, 2019 WL 3456630, at *9 (D. Nev. June 20, 2019) (nonparty received actual notice of subpoena when two efforts at personal service were made and on second attempt, subpoena was left with office staff); *NML Capital Ltd. v. Republic of Argentina*, 2014 WL 3898021, at *9 (D. Nev. Aug. 11, 2014) ("[a] subpoena 'may be served at any place within the United States") (quoting Fed. R. Civ. P. 45(b)(2)); *U.S. v. Richards*, 892 F.2 1047 (9th Cir. 1989) (affirming district court's ruling that corporate subpoena was properly served on company's president). The Bonds Subpoena requires compliance via remote video-conference means, which is clearly within 100 miles of where Bonds was served, and upon information and belief, where Bonds resides; Bonds was also given the option of appearing at a rented office space in Las Vegas. *See* Fed. R. Civ. P. 45(c) (providing that a subpoena may command attendance at a deposition and production of documents at a place "within 100 miles" of where the subpoenaed entity regularly transacts business).

Bonds neither submitted objections nor filed a motion to quash the Subpoena. *See Genx Processors*, 2018 WL 5777485, at *9 (stating that a non-party is excused from compliance with a subpoena if timely objections are served or if a motion to quash is filed); *see also Fed. Housing Agency v. Nev. New Builds, LLC*, 2017 WL 10442650, at *1 (D. Nev. Dec. 7, 2017) (noting that "a subpoena duces tecum is itself a court order, and noncompliance may warrant contempt sanctions" if the party subject to the subpoena does not object to the subpoena within 14 days"); *Clockwork IP, LLC v. Aladdin One Hour HVAC, Inc.*, 2013 WL 3367580, at *1 (D. Nev. July 5, 2013) (court

5

1  granted motion to compel compliance where subpoenaed party failed to make any objections or
2  motion for a protective order).

3  　　　The Bonds Subpoena was properly served and is valid. As detailed herein, Bonds has not
4  provided any legal basis for its noncompliance—to be sure, Bonds never responded at all or appeared
5  for his deposition. Therefore, the Court should compel Bonds' compliance by requiring him to appear
6  for a deposition.

7  　　　**B.　　The Wyndham Subpoena Seeks Relevant Deposition Testimony from Bonds.**

8  　　　The Bonds Subpoena falls within the proper scope of discovery under the Rules. Rule 26(b)
9  provides that a party may obtain discovery regarding "any nonprivileged matter that is relevant to any
10  party's claim or defense." Fed. R. Civ. P. 26(b). "A Rule 45 subpoena must fall within the scope of
11  proper discovery under Fed. R. Civ. P. 26(b)(1), which limits discovery to any mater, not privileged,
12  that is relevant to the claim or defense of any party in the pending action. Relevance within the
13  meaning of Rule 26(b)(1) is considerably broader than relevance for trial purposes." *WideVoice*
14  *Comm's, Inc. v. Qwest Comm's Co., LLC*, 2012 WL 1439071, at *4–8 (D. Nev. Apr. 26, 2012)
15  (ordering compliance with subpoenas over objections) (quotation marks and internal citation
16  omitted); *Turnbow v. Life Partners, Inc.*, 2012 WL 3599212, at *3–4 (D. Nev. Aug. 20, 2012)
17  (granting, in part, plaintiffs' motion to compel non-party compliance with subpoena over objections
18  where the documents sought were relevant and discoverable).

19  　　　Wyndham seeks to depose Bonds pertaining to his business dealings with the other
20  Defendants and his involvement with the operation of the timeshare exit scheme at issue in this case.
21  This information will aid Wyndham in the prosecution of this case as it proceeds to trial. Because
22  party Defendants have refused to provide much of this information, a deposition of Bonds is critical
23  for Wyndham to develop its claims. Thus, the Bonds Subpoena properly seeks a deposition within the
24  permissible scope of discovery.

25  　　　Moreover, Bonds has not objected to the scope of the Subpoena or asserted that compliance
26  with it would impose an undue burden or expense, and the deadline to assert these or any other
27  objection has long passed. *See* Fed. R. Civ. P. 45(d)(2)(B) (providing that objections to a subpoena
28  must be served in writing "before the earlier of the time specified for compliance or 14 days after the

1    subpoena is served"). Accordingly, Bonds has now waived any objections he may wish to assert, and

2    Wyndham is entitled to his deposition. *See Munoz v. Chartis Prop. Cas. Co.*, 2014 WL 3375509, at

3    *2 (D. Nev. July 7, 2014) (non-party subpoena recipients waived all objections due to their failure to

4    timely object pursuant to Rule 45; granting motion to compel and ordering that subpoena recipients

5    produce full responses, without objection). The Court should therefore compel Bonds to comply with

6    the Subpoena and submit to a deposition.

7         **B.    WYNDHAM IS ENTITLED TO ITS ATTORNEYS' FEES AND COSTS**

8         Under Rule 37(a)(5), Wyndham is entitled to recover its expenses, including attorneys' fees

9    and costs, incurred as a result of filing this Motion. Fed. R. Civ. P. 37(a)(5) ("If the motion [to

10   compel] is granted . . . the court must, after giving an opportunity to be heard, require the party or

11   deponent whose conduct necessitated the motion, the party or attorney advising the conduct, or both

12   to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.");

13   *Prasad v. County of Sutter*, 2013 WL 3773894, at *1 (E.D. Cal. July 17, 2013) (awarding plaintiff

14   reasonable attorney's fees of over $18,000 where non-movant failed to produce requested

15   information until after the plaintiff's motion to compel was filed).

16        Wyndham is not able to resolve this discovery dispute without the Court's intervention.

17   Bonds has offered no justification for failing to comply with the Subpoena and appear for his

18   deposition—in fact, Bonds has never responded to any of Wyndham's counsel's attempts to

19   communicate with him. Moreover, Wyndham has been and continues to be prejudiced by Bonds'

20   actions and the circumstances warrant an award of expenses. *Rockwell Int'l, Inc. v. Pos-A-Traction*

21   *Indus., Inc.*, 712 F.2d 1324, 1326 (9th Cir. 1983) (holding that district court properly ordered

22   subpoenaed witness' attorney to pay motion to compel expenses); *Herb Reed Enterprises, Inc. v.*

23   *Monroe Powell's Platters, LLC*, 2013 WL 3642531, at *3 (D. Nev. July 11, 2013) (awarding

24   prevailing party nearly $8,000 in fees and costs incurred in making successful motion to compel);

25   *Ultradent, Prod., Inc. v. Hayman*, 2002 WL 31119425, at *5 (S.D.N.Y. Sept 24, 2002) (awarding

26   costs under Rule 37 against non-party who failed to comply with document subpoena).

27        Additionally, since Bonds failed to comply with the Subpoena and did not offer or submit any

28   objections or other reasons for his non-compliance, the Court may hold Bonds in contempt. *See* Fed.

1    R. Civ. P. 45(g) ("The Court for the district where compliance is required . . . may hold in contempt a

2    person, who, having been served, fails without adequate excuse to obey the subpoena or an order

3    related to it."); *see also Martinez Antique & Salvage Liquidators, Inc.*, 2011 WL 798707, at *2 (N.D.

4    Cal. Feb. 8, 2011) (requiring non-party to show cause why he should not be held in contempt for

5    failure to comply with subpoena to deposition testimony); *Martinez v. City of Avondale*, 2013 WL

6    5705291, at *5 (D. Ariz. Oct. 18, 2013) (ordering non-party to show cause why he should not be held

7    in contempt for failure to comply with duly issued subpoena). A finding of contempt is warranted

8    here because Bonds' conduct shows willfulness. It is without question that Bonds was served with

9    the Subpoena, aware of his obligations to comply, and chose not to comply. In finding the Contempt,

10   the Court may award Wyndham litigation expenses, in addition to any other sanctions the Court

11   deems appropriate. *See Forsythe v. Brown*, 281 F.R.D. 577, 592–93 (D. Nev. 2012) (magistrate

12   judge's recommendation that non-party witness be held in contempt because he failed to demonstrate

13   that he took reasonable steps to comply with subpoenas and recommendation that attorney's fees be

14   awarded to prevailing party), *rpt. & rec. adopted by*, 2012 WL 1833393 (D. Nev. May 18, 2012). The

15   Court should find Bonds in contempt and order him to reimburse Wyndham's costs and expenses,

16   including attorneys' fees, incurred in bringing this Motion.[1]

17   / / /

18

19   / / /

20

21   / / /

22

23   / / /

24

25   / / /

26

27   _____

28       [1] If the Court grants Wyndham's request, Wyndham will submit itemized documentation of its
     litigation expenses.

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant Wyndham's Motion for Contempt and to Compel and enter an Order (1) compelling Bonds to appear for deposition on or before two (2) weeks from this Court's Order; (2) awarding Wyndham its reasonable attorneys' fees and costs associated with bringing this Motion; and (3) granting such further and other relief as the Court deems necessary and proper.

Dated this 13th day of August, 2021.      ARMSTRONG TEASDALE LLP

By:___/s/ Michelle D. Alarie_____
      MICHELLE D. ALARIE, ESQ.
      Nevada Bar No. 11894
      3770 Howard Hughes Parkway, Suite 200
      Las Vegas, Nevada 89169

      SHUTTS & BOWEN, LLP
      Glennys Ortega Rubin, Esq. (FL 0556361),
      LR IA 11-2 petition forthcoming
      B. Travis Brown, Esq. (FL 1011618),
      LR IA 11-2 petition forthcoming
      300 S. Orange Ave., Ste. 1600
      Orlando, Florida 32801

      *Attorneys for Defendant Wyndham Vacation Ownership, Inc., Wyndham Vacation Resorts, Inc., Wyndham Resort Development Corporation, Shell Vacations, LLC, SVC-West, LLC, SVC-Americana, LLC, and SVC-Hawaii, LLC*

1

## **CERTIFICATE OF SERVICE**

2       Pursuant to Fed. R. Civ. P. 5 (b), and Section IV of District of Nevada Electronic Filing

3   Procedures, I certify that I am an employee of ARMSTRONG TEASDALE LLP, and that the

4   foregoing was served:

5   ☐     via electronic service to the address(es) shown below:

6

7

8   ☒     via the U.S. Postal Service at Las Vegas, Nevada, in a sealed envelope, with first-class postage prepaid, on the date and to the address(es) shown below:

9

10   Joseph L. Hammons
Email: jhammons@bellsouth.net

11   Secondary Email:
jlhlaw1@bellsouth.net

12   The Hammons Law Firm, P.A.
17 W. Cervantes Street

13   Pensacola, FL 32501
Telephone: (850) 434-1068

14

15   *Attorney for Defendants,*
*William P. Stewart, Jr.,*

16   *Gallagher-Clifton, LLC and*
*Timeshare Owners Relief, LLC*

17

18

19   Elizabeth Ferguson, Esq.
Email: EBFerguson@MDWCG.com

20   Secondary Email:
jcwestberry@mdwcg.com

21   Marshall Dennehey Warner Coleman
&

22   Goggin, P.C.
200 W. Forsyth Street, Suite 1400

23   Jacksonville, FL  32202
Telephone: (904) 358-4200

24   Facsimile:  (904) 355-0019

25

26   *Attorney for Alleviate Consulting LLC*
*f/k/a Timeshare Liquidation*

27   *Solutions, LLC and Clayton Anthony*
*Gonzalez*

28

Jeffrey M. Partlow, Esq.
Email: Jeffrey.partlow@csklegal.com
Secondary Email:
Natasha.acevedo@csklegal.com
Geraldine P. Pena, Esq.
Email: Geraldine.pena@csklegal.com
Cole, Scott & Kissane, P.A.
Tower Place, Suite 400
1900 Summit Tower Blvd.
Orlando, Florida 32810
Telephone: (321) 972-0025
Facsimile (321) 972-0099

and

G. Mark Albright, Esq. *(Pro Hac Vice)*
Email: gma@albrightstoddard.com
Email: abrebbia@albrightstoddard.com
Email: bclark@albrightstoddard.com
Email:cgrey@albrightstoddard.com
Jorge L. Alvarez, Esq. *(Pro Hac Vice)*
Email: jalvarez@albrightstoddard.com
Email: cgrey@albrightstoddard.com
Albright Stoddard Warnick Albright, PC
801 So. Rancho Drive, Suite D-4
Las Vegas, Nevada 89106
Telephone: (702) 384-7111
Facsimile: (702) 384-0605

*Attorneys for Defendant, Resort Legal*
*Team, Inc.*

10

1    Jeffrey M. Partlow, Esq.                Charles E. Gallagher (PRO SE)
     Email: Jeffrey.partlow@csklegal.com     Email: gallagherclosings@gmail.com
2    Secondary Email:                        Email: charles@gallagher-clifton.com
     Natasha.acevedo@csklegal.com            Email: charles@nationaltimesharelaw.com
3    Geraldine P. Pena, Esq.                 Email: charles@timeshare.law
     Email: Geraldine.pena@csklegal.com      329 Serina Cove
4    Cole, Scott & Kissane, P.A.             Destin, FL 32541
     Tower Place, Suite 400                  Telephone: 850-666-0074
5    1900 Summit Tower Blvd.
     Orlando, Florida 32810
6    Telephone: (321) 972-0025
     Facsimile (321) 972-0099
7
8    Paulino T. Bonds, Sr., a/k/a Pauli
     Bonds
9    Email: paulbonds@icloud.com
     3722 Keltie Brook Drive
10   Las Vegas, Nevada 89141

11

12   Date:  August 13, 2021                  */s/ Christie Rehfeld*
                                             An employee of Armstrong Teasdale LLP
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit "A"

# Declaration of Glennys Ortega Rubin

# Exhibit "A"

1

MICHELLE D. ALARIE, ESQ. (NV 11894)
ARMSTRONG TEASDALE LLP

2

3770 Howard Hughes Parkway, Suite 200
Las Vegas, Nevada 89169

3

Telephone:  702.678.5070
Facsimile:  702.878.9995

4

malarie@atllp.com

5

Glennys Ortega Rubin, Esq. (FL 0556361), LR IA 11-2 petition forthcoming

6

B. Travis Brown, Esq. (FL 1011618), LR IA 11-2 petition forthcoming
SHUTTS & BOWEN, LLP

7

300 S. Orange Ave., Ste. 1600
Orlando, Florida 32801

8

Telephone:  407-835-6755
Facsimile:  408-849-7255

9

grubin@shutts.com

10

tbrown@shutts.com

11

*Attorneys for Defendant Wyndham Vacation Ownership, Inc., Wyndham Vacation Resorts, Inc.,*

12

*Wyndham Resort Development Corporation, Shell Vacations, LLC, SVC-West, LLC, SVC-Americana, LLC, and SVC-Hawaii, LLC*

13

**UNITED STATES DISTRICT COURT**

14

**DISTRICT OF NEVADA**

15

WYNDHAM VACATION OWNERSHIP,
INC., ET AL.,

16

Plaintiffs,

17

v.

18

CHARLES E. GALLAGHER, ESQ., ET AL.,

19

Defendants.

20

21

Case No.:

(Underlying Civil Action: 6:19-cv-00476-GAP-EJK; United States District Court for the Middle District of Florida)

**DECLARATION OF GLENNYS ORTEGA RUBIN**

22

I, Glennys Ortega Rubin, declare as follows:

23

1.      I am over the age of 18 and am competent to testify as to the matters contained herein.

24

I am a partner of the law firm of Shutts & Bowen, LLP ("Shutts"). Plaintiffs Wyndham Vacation

25

Ownership, Inc., Wyndham Vacation Resorts, Inc., Wyndham Resort Development Corporation,

26

Shell Vacations, LLC, SVC-West, LLC, SVC-Americana, LLC, and SVC-Hawaii, LLC (collectively

27

"Plaintiffs" or "Wyndham"), have retained Shutts to provide legal representation in this

28

1

miscellaneous action and in connection with the above-referenced civil action, pending in the United States District Court for the Middle District of Florida (the "Florida Lawsuit"). This Declaration is based on my personal knowledge and review of company records.

2.       The Florida Lawsuit is an action for damages and injunctive relief arising out of Defendants' unlawful timeshare "exit" scheme involving false advertising and tortious interference that induces Wyndham timeshare owners to default on their binding contractual obligations to Wyndham. A true and accurate copy of the Complaint filed in the Florida Lawsuit is attached hereto as **Exhibit "1."**

3.       Third-party subpoena recipient, Paulino T. Bonds, Sr. ("Bonds"), failed to appear for his deposition, as ordered by a subpoena lawfully issued by the U.S. District Court for the Middle District of Florida. As a result, Wyndham is not able to conduct full discovery of Defendants regarding the issues in this case.

4.       Through discovery in the Florida Lawsuit, Wyndham has learned that Bonds was participating in, and intertwined with, the timeshare exit scheme at the heart of this case. Wyndham has discovered that Bonds may be the ultimate mastermind of the timeshare exit scheme, including the portion that ties in through Gallagher. Bonds possesses relevant information related to the overarching timeshare exit scheme in this case.

5.       Wyndham has been unable to garner the necessary discovery through the litigants in this case and attendant to what may be a critical aspect of this ongoing litigation. Therefore, Wyndham seeks limited third-party discovery to gather information about the timeshare scheme at issue here and Bonds role in it.

6.       On June 9, 2021, Wyndham's counsel issued a subpoena to Bonds requiring Bonds to submit to a deposition on June 25, 2021 (the "Subpoena" or "Bonds Subpoena"). A true and accurate copy of the Bonds Subpoena is attached hereto as **Exhibit "2."** Bonds was required to appear by Zoom or at a rented office space in Las Vegas, Nevada.

7.       Two separate attempts were made to serve Bonds personally. In between these two attempts, Bonds reached out to the process server by telephone to discuss service of the subpoena. During the second service attempt, on June 12, 2021, the Bond Subpoena was served on Bonds' wife,

who accepted service on Bonds' behalf, at 3722 Keltie Brook Dr., Las Vegas, NV 89141. A true and accurate copy of the Proof of Service is attached as **Exhibit "A"** to the Deposition Transcript from June 25, 2021, which is attached hereto as **Exhibit "3."**

8.      I communicated with Bonds by e-mail on June 22, 2021, June 23, 2021, and June 25, 2021, to confirm Bonds attendance at the deposition. Copies of these communications are attached as **Exhibit "B"** to the deposition transcript from June 25, 2021, which is attached hereto as Exhibit 3. Bonds never responded to these communications.

9.      In addition, I attempted to communicate with Bonds twice via a telephone number in my possession for him, (609) 626-1003. I left two telephone messages but received no call back.

10.     I prepared for and attended Bonds' deposition on June 25, 2021 via Zoom at significant expense to my client. Bonds was given the option of appearing at a rented office space in Las Vegas, Nevada, or via Zoom. Bonds did not appear or testify at this deposition.

11.     To date, I have received no response whatsoever to any of my e-mails to Bonds or phone calls placed to Bonds.  Nevertheless, I again reached out to Bonds via email on August 13, 2021, to confer regarding the filing of a motion to compel.  No response was received.

12.     Nor has Bonds offered any justification for his failure to comply with the Subpoena and attend his deposition.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.
Executed on August 13, 2021.

/s/ Glennys Ortega Rubin
GLENNYS ORTEGA RUBIN

3

# Exhibit "1"

# Second Amended Complaint for Damages and Injunctive Relief

# Exhibit "1"

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

WYNDHAM VACATION OWNERSHIP, INC., a Delaware corporation; WYNDHAM VACATION RESORTS, INC.; a Delaware corporation, WYNDHAM RESORT DEVELOPMENT CORPORATION, an Oregon Corporation; SHELL VACATIONS, LLC, an Arizona limited liability company; SVC-WEST, LLC, a California limited liability company; SVC-AMERICANA, LLC, an Arizona limited liability company; and SVC-HAWAII, LLC, a Hawaii limited liability company,

       Plaintiffs,

v.

CHARLES E. GALLAGHER, ESQ., an individual; WILLIAM P. STEWART JR/ a/k/a PAUL STEWART a/k/a BILL STEWART, an individual; GALLAGHER-CLIFTON, LLC a/k/a The Gallagher Firm, a Florida limited liability company; TIMESHARE OWNERS RELIEF, LLC, f/k/a Timeshare Solutions, LLC a Florida limited liability company; RESORT LEGAL TEAM, INC., a Nevada corporation, ALLEVIATE CONSULTING LLC f/k/a Timeshare Liquidation Solutions LLC, a Missouri limited liability company; CLAYTON ANTHONY GONZALEZ, an individual; TRADEBLOC INC., a Texas corporation; LISA TREVINO, an individual; and ALBERT TREVINO, an individual,

       Defendants.

CASE NO.: 6:19-cv-476-Orl-31EJK

## SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

    Wyndham Vacation Ownership, Inc. ("WVO"); Wyndham Vacation Resorts, Inc.

("WVR"); Wyndham Resort Development Corporation ("WRDC"); Shell Vacations, LLC

("SV"); SVC-West, LLC ("SVC-West"); SVC-Americana, LLC ("SVC-Americana"); and SVC-Hawaii, LLC ("SVC-Hawaii") (collectively, "Wyndham"), by and through the undersigned counsel, and pursuant to the Federal Rules of Civil Procedure, hereby sue Defendants Charles E. Gallagher, Esq. ("Gallagher"), William P. Stewart Jr. a/k/a Paul Stewart a/k/a Bill Stewart ("Stewart"), Gallagher-Clifton, LLC a/k/a The Gallagher Firm, ("Gallagher-Clifton"), Timeshare Owners Relief, LLC f/k/a Timeshare Solutions, LLC ("Timeshare Owners Relief"), Resort Legal Team, Inc. ("Resort Legal Team"), Alleviate Consulting LLC f/k/a Timeshare Liquidation Solutions LLC ("Alleviate"), Clayton Anthony Gonzalez ("Gonzalez"), Tradebloc Inc. ("Tradebloc"), and Lisa and Albert Trevino (collectively, the "Trevinos") (all Defendants collectively referred to as the "Defendants"), and state:

A.  **Introduction**

1.      Wyndham is a global leader in the development of timeshare properties.

2.      Wyndham has valid and binding contracts (the "Timeshare Contracts") with individuals who purchased timeshare interests from Wyndham (the "Wyndham Owners"). These Timeshare Contracts control the benefits and obligations of timeshare ownership.

3.      Defendants are a group of individuals and related companies that conspire together to harm Wyndham Owners and Wyndham. Stewart, Timeshare Owner Relief, Resort Legal Team, the Trevinos, Alleviate, and Gonzalez have recruited lawyers – Gallagher and his fake law firm, Gallagher-Clifton – as well as a purported credit repair agency, Tradebloc, in order to carry out their scheme that is detailed more fully herein. An organizational chart showing the interrelatedness of the various defendants is annexed hereto as Exhibit 1.

4.      Defendants are not parties to the Timeshare Contracts. Yet they falsely advertise "timeshare cancellation services" that purport to "cancel...timeshare and any outstanding

timeshare mortgage as well." The following is a representative advertisement by Timeshare

Owners Relief for illustrative purposes[1]:



 We are a timeshare relief company that specializes in complete timeshare cancellations. We are not a listing company, nor a deed transfer company. We are not going to sell your timeshare; we are going to cancel it, removing you entirely from the deed, so you will never have to pay another maintenance fee, mortgage payment or special assessment ever again!

Our service not only cancels all future payments and maintenance fees, but also cancels all existing payments and fees. Whether you still owe thousands of dollars on a mortgage, or you just got hit with another increase in maintenance fees, we will cancel those debts and relieve you and your family of any future financial obligations.

Our system will provide you with a cancellation letter directly from your timeshare company confirming that you are no longer responsible for the contractual obligations.

5.      Defendants solicit Wyndham Owners through a multitude of advertisements that

misrepresent the nature of Defendants' "timeshare cancellation service." Examples of these

advertisements are set forth in greater detail hereinbelow.

6.      Defendants misleadingly advertise a "100% money back guarantee" that

Defendants can "cancel" the Timeshare Contracts, including Wyndham Owners' Timeshare

Contracts. An example of the '100% guarantee' allegedly offered by Timeshare Owners Relief is

included below[2]:

---

[1] http://web.archive.org/web/20180107205623/http://www.timeshareownersrelief.com/ (last accessed Feb. 18, 2019) (highlighting supplied). A full copy of this website is annexed hereto as Exhibit 2.

[2] http://web.archive.org/web/20180109095346/http://www.timeshareownersrelief.com/our-guarantee/ (last accessed Feb. 21, 2019). A full copy of this website is annexed hereto as Exhibit 3.

## Our Guarantee

Providing transparency in our services is something we take great pride in. When you become our client, you will be assigned a dedicated case manager who will keep you updated throughout every step of the process.

### Payment For Our Services:

Here at Timeshare Owners Relief, LLC we only accept payment from our clients **AFTER** our transfer agreement has been reviewed and signed by both parties. Never allow any company to charge you money prior to you having a written and endorsed agreement in your possession that you clearly understand and you can verify their verbal promises are in writing. As an extra layer of security, we recommend always paying for any type of service-type product with a major credit card as you may have additional protections from your credit card if the company does not perform as promised in writing. Timeshare Owners Relief, LLC only accepts payment by credit card – giving you the peace of mind that you may have extra layers of protection on top of our **100% Money Back Guarantee**.

7.      However, Defendants' "timeshare cancellation service" provides no legal means of cancellation and is instead designed to cause the Wyndham Owners to stop fulfilling their payment obligations under the Timeshare Contracts, resulting in breach, default, and damaged credit.

8.      In order to solicit Wyndham Owners, Defendants' online advertisements and website content create a false narrative that Defendants' "timeshare cancellation service" is equivalent to legal representation or that Defendants are operating a law firm, when in fact they are not.

9.      In fact, while Gallagher is indeed a lawyer, admitted to the Bar of the State of Georgia, Gallagher-Clifton is not a law firm and Gallagher denies representing any consumers in the role of a lawyer, despite the representations and implications made by Timeshare Owner Relief and/or Resort Legal Team.

10.     Further, Defendants' online advertisements and website content also create a false narrative that Defendants will be able to lawfully prevent any delinquency on owners' payments on their timeshares from being reported to credit bureaus, when in fact they are not able to do so.

11.     On March 4, 2020, the Florida Bar instituted an action against Florida attorney William Saliba ("Bar Complaint"), alleging numerous violations of the Rules Regulating the

- 4 -

Florida Bar in connection with his role in the timeshare cancellation scheme alleged in this Second Amended Complaint. A copy of the March 4, 2020 Florida Bar Petition is attached as Exhibit 4. The Bar Complaint details the improvident actions of Defendants Stewart and Timeshare Owners Relief in facilitating William Saliba's alleged unethical conduct. More importantly, this action by the Florida Bar is very revealing as it can be surmised that the Florida Bar's position is that these purported "timeshare cancellation services" are not legitimate. It so follows that any advertising describing Defendants' services as "legitimate," "legal," or utilizing actual lawyers is necessarily false and misleading.

### B. <u>Parties, Jurisdiction, and Venue</u>

#### i. <u>The Plaintiffs</u>

12.    WVO is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

13.    WVR is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

14.    WRDC is a corporation organized and existing under the laws of the State of Oregon with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

15.    SV is a limited liability company organized and existing under the laws of the state of Arizona with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

16.    Plaintiff SVC-West, LLC is a limited liability company organized and existing under the laws of the state of California with a principal place of business located at 6277 Sea

Harbor Drive, Orlando, Florida 32821.

17.     Plaintiff SVC-Americana, LLC is a limited liability company organized and existing under the laws of the state of Arizona with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

18.     Plaintiff SVC-Hawaii, LLC is a limited liability company organized and existing under the laws of the state of Hawaii with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

19.     WVO is the parent company or ultimate parent company of WVR, WRDC, and SV, which conducts timeshare sales and development activities throughout the United States.

ii.     **The Defendants**

20.     Gallagher is an individual and member of the Bar of the State of Georgia. Gallagher resides in Destin, Florida and can be located at 4742 Amhurst Circle, Destin, Florida 32541.

21.     Stewart is an individual and resident of the State of Florida. Stewart is a former employee of WVR. Stewart can be located at 122 Seascape Drive, Unit 1670, Miramar Beach, Florida 32250. Stewart is not an attorney.

22.     Gallagher-Clifton is a limited liability company organized and existing under the laws of the State of Florida with a principal address at 4641 Gulfstarr[sic] Drive, Suite 102, Destin, Florida 32541. Stewart is the registered agent of Gallagher-Clifton.

23.     Gallagher-Clifton is not a law firm.

24.     Timeshare Owners Relief f/k/a Timeshare Solutions, LLC is a limited liability company organized and existing under the laws of the State of Florida. Timeshare Solutions changed its name to Timeshare Owners Relief on or about December 30, 2014; a copy of the

relevant Florida Secretary of State records is annexed hereto as Exhibit 5. Stewart is the registered agent of Timeshare Owners Relief and can be located at 122 Seascape Drive, Unit 1670, Miramar Beach, Florida 32250.

25.     Resort Legal Team is a corporation organized and existing under the laws of the State of Nevada. The registered agent of Resort Legal Team is United States Corporation Agents, Inc. located at 500 North Rainbow Boulevard, Suite 300A, Las Vegas, Nevada 89107.

26.     Alleviate is a limited liability company organized and existing under the laws of the State of Missouri with a principal address at 1835 South Stewart Avenue, Suite 116, Springfield, Missouri 65804.

27.     Gonzalez is an individual and resident of the State of Missouri. Gonzalez can be located at 1520 South Tuscany Court, Ozark, Missouri 65721.

28.     Tradebloc is a corporation organized and existing under the laws of the State of Texas with a principal address at 701 Commerce St., Dallas, Texas 75202.

29.     The Trevinos are individuals and residents of the State of Nevada.

     **iii.**   **Subject Matter Jurisdiction**

30.     This Court has subject matter jurisdiction over the claims sounding in the Lanham Act alleged herein pursuant to 28 U.S.C. §§ 1331 and 1338. This Court has subject matter jurisdiction over the claims sounding in state law alleged herein pursuant to 28 U.S.C. § 1367 as the state law claims are so related to the Lanham Act claims that they form part of the same case or controversy.

     **iv.**   **Personal Jurisdiction**

31.    This Court has personal jurisdiction over the Defendants pursuant §48.193(1)(a) and §48.193(3), Fla. Stat., as Defendants are engaged in substantial and not isolated activity within Florida, operate a business and have an office in Florida, and have committed a tortious act within this state.

32.    More specifically, with regard to Gallagher and Stewart, they are residents of the State of Florida.

33.    With respect to Gallagher-Clifton and Timeshare Owners Relief, they are both limited liability companies organized and existing under the laws of the State of Florida and actually operating in the State of Florida.

34.    With respect to Resort Legal Team and the Trevinos (who are alter egos of Resort Legal Team), Resort Legal Team and the Trevinos conspire with the other Defendants to execute the scheme and, as part of this conspiracy, Resort Legal Team (via the Trevinos) forwards unsuspecting and unwitting consumers to Gallagher, Stewart, and Gallagher-Clifton in the State of Florida and therefore Resort Legal Team and the Trevinos have systemic contacts with the State of Florida.

35.    Moreover, Resort Legal Team (via the Trevinos) operates a website that is accessible to residents of the State of Florida which involves the repeated transmission of electronic files and information into and out of the State of Florida on a regular and systemic – and not limited – basis.

36.    Finally, Resort Legal Team's and the Trevinos' activities with respect to Wyndham are directed at Wyndham, which is located in the State of Florida, and designed to interfere with, and cause the breach of, contracts with payment obligations, where the payments are made to Wyndham in the State of Florida.

37.     The Court's exercise of personal jurisdiction over Resort Legal Team and the Trevinos would not offend the traditional notions of fair play and substantial justice. Therefore, the Court has personal jurisdiction over Resort Legal Team and the Trevinos.

38.     With respect to Alleviate and Gonzalez, they conspire with the other Defendants to execute their scheme and, as part of this conspiracy, Alleviate and Gonzalez forward all Wyndham Owners to Gallagher, Stewart, and Gallagher-Clifton in the State of Florida and therefore have systemic contacts with the State of Florida.

39.     Moreover, Alleviate and Gonzalez operate a website that is accessible to residents of the State of Florida which involves the repeated transmission of electronic files and information into and out of the State of Florida on a regular and systemic – and not limited – basis.

40.     Finally, Alleviate's and Gonzalez's activities with respect to Wyndham are directed at Wyndham, which is located in the State of Florida, and designed to interfere with, and cause the breach of, contracts with payment obligations, where the payments are made to Wyndham in the State of Florida.

41.     The Court's exercise of personal jurisdiction over Alleviate and Gonzalez would not offend the traditional notions of fair play and substantial justice. Therefore, the Court has personal jurisdiction over Alleviate and Gonzalez.

42.     With respect to Tradebloc, it operates a website that is accessible to residents of the State of Florida which involves the repeated transmission of electronic files and information into and out of the State of Florida on a regular and systemic – and not limited – basis.

43.     Further, Tradebloc's activities with respect to Wyndham are directed at Wyndham, which is located in the State of Florida, and designed to interfere with, and cause the

breach of, contracts with payment obligations, where the payments are made to Wyndham in the State of Florida.

44. Moreover, Tradebloc conspires with the other Defendants to execute their scheme and, as part of this conspiracy, Tradebloc works closely with Stewart, who is a Florida resident, to run all Wyndham Owners connected to Gallagher, Stewart, and Gallagher-Clifton in the State of Florida through Tradebloc as a key part of the scheme; therefore, Tradebloc has systemic contacts with the State of Florida.

45. The Court's exercise of personal jurisdiction over Tradebloc would not offend the traditional notions of fair play and substantial justice. Therefore, the Court has personal jurisdiction over Tradebloc.

### v. Venue

46. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391 because, as described herein, a substantial part of the events giving rise to Plaintiffs' claims occurred in Florida, and a portion of Defendants' conduct giving rise to the claims set forth herein (specifically, both their marketing activities and their repeated sending of letters to Wyndham in Orlando, Florida) occurred in this District. Moreover, in non-patent cases,[3] 28 U.S.C. § 1391(d) states that in multi-district states (such as Florida), a corporate defendant "shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction..." Because Defendants direct substantial activity into the Middle District of Florida, they would be subject to personal jurisdiction in this district, and venue is proper.

### vi. Conditions Precedent, Attorney's Fees

---

[3] That is, cases where 28 U.S.C. § 1400 is inapplicable.

47.     All conditions precedent to the bringing and maintenance of this action have been performed, were waived, would be futile if attempted, or have otherwise been satisfied or occurred.

48.     Wyndham has retained the services of the undersigned lawyers to represent it in this matter and have obligated themselves to pay reasonable attorneys' fees, which fees are recoverable against Defendants pursuant to 15 U.S.C. § 1117 and Fla. Stat. § 501.2105.

C.      **Wyndham's Timeshare Business**

49.     Wyndham devotes substantial resources to advertising and other marketing promotions in an effort to maintain and enhance the value of their established and famous brands.

50.     As part of its business, WVR, WRDC, SV, SVC-West, SVC-Americana, and SVC-Hawaii enter into valid and binding Timeshare Contracts with individuals who thereby become Wyndham Owners. At the time that Wyndham Owners purchase timeshares from WVR, WRDC, SV, SVC-West, SVC-Americana, and/or SVC-Hawaii, the Wyndham Owners execute Contracts for Purchase and Sale wherein the Wyndham Owners agree to pay an amount certain for the timeshare interest, as well as maintenance and/or annual fees to Wyndham for the upkeep of the timeshare units and common areas of the timeshare properties. In addition, Wyndham Owners agree to pay a pro-rated share of the property taxes to Wyndham, which is then submitted by Wyndham to the appropriate local tax collectors. Often, if a purchaser desires mortgage financing, they may apply for a mortgage, and after approval, may execute a Promissory Note and Mortgage, which are referenced and incorporated in the Purchase Agreement. These Timeshare Contracts are legally binding contracts and, after the passage of a statutory rescission period, cannot be unilaterally rescinded without Wyndham's express

- 11 -

agreement.

51.     Recognizing that some Wyndham Owners may desire to gracefully exit their timeshare obligations, or may have a need to do so, Wyndham has created the Ovation® program, which allows Wyndham Owners to terminate their Timeshare Contracts if they meet certain conditions.

**D.     Defendants' Scheme**

52.     Defendants falsely and misleadingly advertise a 'guaranteed' ability to 'terminate' or 'cancel' timeshare contracts, including the Timeshare Contracts, on behalf of consumers, including Wyndham Owners.

53.     Defendants possess no such ability.

54.     Instead, what Defendants do is take large, up-front fees from consumers and then do little or nothing on their behalf other than directing the consumer to stop making payments to their timeshare developers, eventually causing the consumer to default on their timeshare obligations, resulting in foreclosure and substantial harm to by the consumer and the timeshare developer.

55.     Defendants can be broken into four discreet groups: (1) the marketing companies that solicit the consumers and refer them to (2) the fake law firms and (3) the fake credit repair agency; and (4) the individuals who oversee and control the overall scheme.

**i.     The Marketing Companies**

56.     In this particular scheme, Timeshare Owners Relief, Resort Legal Team, and Alleviate are the marketing companies that engage in false and/or misleading advertising designed to lure customers into the scheme. Timeshare Owners Relief, Resort Legal Team, and

Alleviate engage in substantive deceptive and/or misleading marketing activity and then demand

substantial, up-front payments from consumers, including Wyndham Owners.

### a.   Timeshare Owners Relief

57.    As part of the 'services' Timeshare Owners Relief allegedly provides, Timeshare

Owners Relief instructs Wyndham Owners to cease making payments under their Timeshare

Contracts to Wyndham.

58.    Timeshare Owners Relief has no legitimate basis for instructing Wyndham

Owners to cease making payments under the Timeshare Contracts. Timeshare Owners Relief

instructs or implies to Wyndham Owners to stop making payment under their Timeshare

Contracts with the purpose of causing the Wyndham Owners to default on their Timeshare

Contracts, which will cause a foreclosure of the Timeshare Contracts. Timeshare Owners Relief

will then tell the Wyndham Owner that Timeshare Owners Relief was "successful" in

"cancelling" the Timeshare Contract when, in reality, the interest was foreclosed upon, a result

any consumer could obtain for free by simply refusing to make payments due under the

Timeshare Contract.

59.    Additionally, directing Wyndham Owners to cease making payments to

Wyndham serves two additional goals: (1) it diverts the stream of payments owed to Wyndham

from Wyndham to Timeshare Owners Relief, and (2) Timeshare Owners Relief justifies its fees

by telling Wyndham Owners they are saving money by not having to pay Wyndham.

60.    Timeshare Owners Relief also instructs the Wyndham Owners to have no contact

with Wyndham, falsely stating that doing so will facilitate the "exit" process. In reality,

Timeshare Owners Relief instructs Wyndham Owners to have no contact with Wyndham to

- 13 -

prevent the Wyndham Owner from learning the truth about the status of their account (i.e., that it is going into foreclosure).

### b. **Resort Legal Team**

61.     As part of the 'services' Resort Legal Team allegedly provides, Resort Legal Team instructs Wyndham Owners to cease making payments under their Timeshare Contracts to Wyndham.

62.     Resort Legal Team has no legitimate basis for instructing Wyndham Owners to cease making payments under the Timeshare Contracts. Resort Legal Team instructs or implies to Wyndham Owners to stop making payment under their Timeshare Contracts with the purpose of causing the Wyndham Owners to default on their Timeshare Contracts, which will cause a foreclosure of the Timeshare Contracts. Resort Legal Team will then tell the Wyndham Owner that Resort Legal Team was "successful" in "cancelling" the Timeshare Contract when, in reality, the interest was foreclosed upon, a result any consumer could obtain for free by simply refusing to make payments due under the Timeshare Contract.

63.     Additionally, directing Wyndham Owners to cease making payments to Wyndham serves two additional goals: (1) it diverts the stream of payments owed to Wyndham from Wyndham to Resort Legal Team, and (2) Resort Legal Team justifies its fees by telling Wyndham Owners they are saving money by not having to pay Wyndham.

64.     Resort Legal Team also instructs the Wyndham Owners to have no contact with Wyndham, falsely stating that doing so will facilitate the "exit" process. In reality, Resort Legal Team instructs Wyndham Owners to have no contact with Wyndham to prevent the Wyndham Owner from learning the truth about the status of their account (i.e., that it is going into foreclosure).

c.     **Alleviate**

65.     As part of the 'services' Alleviate allegedly provides, Alleviate used to instruct Wyndham Owners to cease making payments under their Timeshare Contracts to Wyndham.

66.     However, Alleviate has changed its practices. Now, Alleviate tells Wyndham Owners, as part of scripted sales pitches, that Wyndham has been suing timeshare exit companies for telling Wyndham Owners to stop payment. Instead, Alleviate tells Wyndham Owners that Alleviate can prevent any harm to the Wyndham Owner's credit and that 99% of their clients stop paying Wyndham, with no adverse consequence.

67.     As part of the aforementioned scripted sales pitch, Alleviate sells Wyndham Owners on a service Alleviate terms "blocking a trade line." A "block" is a procedure defined in the Fair Credit Reporting Act, 15 U.S.C. § 1681c-2, involving a report of identity theft. Therefore, Alleviate is either engaging in credit reporting fraud (by causing false claims of identity theft to be made) or materially misrepresenting the nature of the 'services' it provides or arranges. See below for a further discussion of Alleviate's connection to Tradebloc.

68.     Alleviate has no legitimate basis for instructing Wyndham Owners to cease making payments under the Timeshare Contracts. Alleviate instructs or implies to Wyndham Owners to stop making payment under their Timeshare Contracts with the purpose of causing the Wyndham Owners to default on their Timeshare Contracts, which will cause a foreclosure of the Timeshare Contracts. Alleviate will then tell the Wyndham Owner that Resort Legal Team was "successful" in "cancelling" the Timeshare Contract when, in reality, the interest was foreclosed upon, a result any consumer could obtain for free by simply refusing to make payments due under the Timeshare Contract.

69.     Additionally, directing Wyndham Owners to cease making payments to

Wyndham serves two additional goals: (1) it diverts the stream of payments owed to Wyndham from Wyndham to Alleviate, and (2) Alleviate justifies its fees by telling Wyndham Owners they are saving money by not having to pay Wyndham.

70.     Alleviate also instructs the Wyndham Owners to have no contact with Wyndham, falsely stating that doing so will facilitate the "exit" process. In reality, Alleviate instructs Wyndham Owners to have no contact with Wyndham to prevent the Wyndham Owner from learning the truth about the status of their account (i.e., that it is going into foreclosure).

71.     Alleviate also falsely states or implies that it has some type of affiliation, endorsement, sponsorship, or relationship with Wyndham as Alleviate prominently displays a registered Wyndham mark on its website, www.alleviateconsulting.com.

ii.    **The Fake Law Firm**

72.     Timeshare Owners Relief and Resort Legal Team then refer or otherwise forward the Wyndham Owners to Gallagher-Clifton. A list of Wyndham Owners that have been forwarded to Gallagher-Clifton from Timeshare Owners Relief and/or Resort Legal Team (and/or potentially other, as yet unknown third-parties) is annexed hereto as Exhibit 6.

73.     Gallagher-Clifton is an integral part of Defendants' scheme without which the scheme would not function. Because Timeshare Owners Relief and Resort Legal Team advertise "legal" solutions and the involvement of lawyers, Timeshare Owners Relief and Resort Legal Team need a law firm, or a company that appears to be a law firm, in order to carry out their scheme. Gallagher-Clifton fulfills that role.

74.     Additionally, Alleviate sends all Wyndham Owners to Gallagher-Clifton.

75.     Gallagher-Clifton is not actually a law firm; it is a limited liability company that is owned, at least in part, by non-lawyers, including Stewart.

76.     While Gallagher is a lawyer, he is not licensed to practice law in the State of Florida, the location of Gallagher-Clifton. While Gallagher claims to have his own law firm – The Gallagher Firm – there is no such company registered to do business with the State of Florida and 'The Gallagher Firm' shares an address (4641 Gulfstarr Drive, Suite 102, Destin, Florida) and a facsimile number (954-337-3242) with Gallagher-Clifton. Therefore, 'The Gallagher Firm' is in reality nothing more than an alternative name for Gallagher-Clifton.

77.     Gallagher-Clifton fulfills a critical role in Defendants scheme for two reasons. First, it furthers the lies of Timeshare Owners Relief and Resort Legal Team that they are providing 'legal' solutions and that there are 'lawyers' working on behalf of consumers, including Wyndham Owners.

78.     Second, Gallagher-Clifton completes the isolation of the Wyndham Owner from Wyndham to prevent the Wyndham Owner from discovering the truth of what is happening to them. Gallagher-Clifton refers to Wyndham Owners as "clients" and directing Wyndham to contact Gallagher-Clifton, and not the Wyndham Owner, going forward. Thus, Wyndham is prohibited from communicating directly with the Wyndham Owner, and the Wyndham Owner has been told not to communicate with Wyndham, effectively prohibiting the Wyndham Owner from learning the truth that their account is going into foreclosure. In fact, Resort Legal Team specifically advertises this as part of its "process":

## 3. The Process
- Cease and Desist is sent to the Timeshare Developer.
- Timeshare developer can NO LONGER contact you!
- Demand letters sent for cancellation & any possible money back.  [4]

---

[4] http://www.resortlegalteam.com/ (last accessed Feb. 18, 2019).

### iii.    The Fake Credit Repair Agency

79.    Tradebloc is a purported credit "block and repair" agency. (*See* Exhibit 7, Letter from Tim Clark, Tradebloc CEO.)

80.    Tradebloc, acting as a purported agent of the Wyndham Owners, contacts the credit bureaus on the Wyndham Owners' behalf, reporting that the Wyndham Owners were victims of fraud and misrepresentation. (*Id.*)

81.    Upon information and belief, Tradebloc has gone so far as to file false police reports on Wyndham Owners' behalf, claiming that the Wyndham Owners were subject to fraud.

82.    Then, the credit bureaus, acting on Tradebloc's misrepresentation, place a block on the Wyndham Owners' credit report concerning the tradeline associated with their debt to Wyndham, as well as placing a fraud alert on the account. (*Id.*)

83.    Accordingly, when the Wyndham Owner subsequently defaults on their obligation to Wyndham, Wyndham's attempt to report the default to the credit bureaus does not go on the report or is deleted from the report. (*See* Composite Exhibit 8, Experian and Equifax Tradeline Block and Repair Examples.)

84.    Tradebloc's method is admittedly "designed for only one purpose[,] and that is to cause the Credit Bureau's [sic] to initiate a dispute in the hope that it may take more than 30 days for the creditor to respond[.]" (Ex. 7.) In other words: Tradebloc falsifies the report and mucks up the process long enough for the rest of the scheme to work.

85.    As part of their intake process, the marketing company Defendants require the Wyndham Owners to sign a "Tradebloc Addendum," giving Tradebloc the right to contact the credit bureaus on their behalf. (*See* Exhibit 9, Sample Tradebloc Addendum.)

86.    Because Tradebloc is not acting in the best interests of the Wyndham Owners (in

that Tradebloc is acting to prevent the Wyndham Owners from learning that they are defaulting on their obligations to Wyndham), Tradebloc is not truly their agent.

87.     Once Tradebloc has fraudulently placed a tradeline block on the Wyndham Owners' credit reports, this allows the Wyndham Owners to stop paying on their debt to Wyndham with no credit consequences.

88.     Upon information and belief, the marketing company Defendants explicitly treat the credit bureaus' acceptance of Tradebloc's false tradeline block as "permission" for the Wyndham Owners to stop paying Wyndham.

89.     Resort Legal Team and Alleviate advertise these credit "block and repair" services to potential customers as additional bait on the hook, inducing Wyndham Owners to purchase the unlawful "cancellation" services with the false security of knowing that their credit will be (purportedly) unaffected. Without Tradebloc, the marketing company Defendants would not be able to get the customers in the door. (*See* Ex. 7 ("These [credit] questions are uncomfortable because before Tradebloc[,] Contract Cancel Companies really had no satisfactory way to answer them[.] Often the credit dilemma will cost you sales.").)

90.     Moreover, Tradebloc's participation provides the direct link between the advertisements—which promise customers a lawful "cancellation," credit-consequence-free—and the harm to Wyndham—Wyndham Owners' stopping payment.

91.     Tradebloc's involvement allows the marketing company Defendants to tell Wyndham Owners, in sum and substance: we cannot legally advise you not to pay, **but** [wink wink] if you do not pay, it will not affect your credit. (*See* Exhibit 10, Resort Legal Team Call Script.)

92.     Truly, the marketing company Defendants' misrepresentations and inducements

- 19 -

are egregious. For instance, Resort Legal Team has advertised (via a call script) (*see id.*):

> **This next part, I must be crystal clear on how I say this and how you understand it...**
>
> **Although we cannot legally advise this for you, a lot of people ask us if they should continue making payments and that they are concerned on how that could affect their credit. We will be initiating our credit protection program that will protect your credit from any derogatory remarks being placed on your credit report from the timeshare developers. This ensures you will have no blemishes on your credit throughout this process.**
>
> **Again, I can't tell you whether you should or should not continue making payments. That is a decision you are going to have to solely make on your own. But, what I can do, is give you 2 different scenarios of what that might look like.**
>
> **First scenario: you are cancelling your contract and you have decided to continue making payments. The timeshare developer *might* look at this and say, "so they want out of their contract, but they keep paying." There is a chance that this could delay the process.**
>
> **Second scenario: you are cancelling your contract and YOU have made the decision to stop making payments. The timeshare developer might look at this and say, "so they want out of their contract and they are not paying, so it is probably in our best interest to settle this more QUICKLY, rather than later..." Does this make sense?**
>
> **But, whether or not you continue to make payments, the attorneys WILL be able to get you out of your timeshare contract based on everything we discussed here today and what else you can provide them.**
>
> **So, if you do decide to stop making payments, while the attorneys are busy getting you out of your contract, the credit protection ensures that you will have no blemishes on your credit from this decision.**

93.   Upon information and belief, Alleviate has made virtually identical advertisements and statements. (*See generally* Exhibit 11, Invoice from Alleviate containing a fee for "credit block" services.)

94.   Tradebloc is well-aware that Wyndham Owners have contracts with Wyndham and that Resort Legal Team and Alleviate are attempting to circumvent the law and dupe customers out of money for a "cancellation" of those contracts that does not lawfully exist. (*See* Ex. 7 ("'Block & Repair' will make you look like you succeeded when perhaps you really didn't[.]").)

- 20 -

95.     Without Tradebloc's involvement in the scheme, Resort Legal Team and Alleviate would not be nearly as successful in duping Wyndham Owners into defaulting on their obligations to Wyndham. Thus, Defendants' deceptions materially affected Wyndham Owners' decisions to purchase the unlawful "cancellation" services.

96.     Additionally, Tradebloc's involvement immediately after the marketing Defendants have brought in a Wyndham Owner is key to the scheme, as the tradeline block induces Wyndham Owners into believing that the cancellation services are working while the marketing Defendants pass along the unsuspecting consumers to the attorneys for their part in the scheme (or, in this case, the fake law firm of Gallagher-Clifton).

97.     Thus, Tradebloc's participation in the scheme is absolutely crucial to the scheme's ongoing success.

    **iv. The Individuals**

98.     The overall scheme is directed by two individuals: Stewart and Gallagher.

99.      Stewart directs the activities of Timeshare Owners Relief and Gallagher-Clifton and directly participates in those activities, including, without limitation, solicitation of Wyndham Owners, as demonstrated in greater detail herein.

100.    Stewart also works closely with Tradebloc. Upon information and belief, Tradebloc works with Gallagher-Clifton in addition to Resort Legal Team and Alleviate.

101.    Gallagher directly participates in and directs the activities of Gallagher-Clifton, including, without limitation, the signing of the letters sent by Gallagher-Clifton to Wyndham which, as set forth hereinabove, are necessary for Defendants to execute their scheme. Representative samples of these letters are annexed hereto as Composite Exhibit 12.

102.    Gonzalez is the owner and operator of Alleviate. Gonzalez personally directs and

controls the activities of Alleviate, including the activities alleged in this Second Amended Complaint. This includes, *inter alia*, personally participating in and directing scripted phone calls with Wyndham Owners to solicit Wyndham Owners to retain Alleviate's services. Alleviate is nothing more than an alter ego of Gonzalez.

103. The Trevinos are the owners and operators of Resort Legal Team. The Trevinos each personally direct and control the activities of Resort Legal Team, including the activities alleged in this Second Amended Complaint. This includes, *inter alia*, personally participating in and directing scripted phone calls with Wyndham Owners to solicit Wyndham Owners to retain Resort Legal Team's services. (*See* Exhibit 13, Resort Legal Team call script sent from Lisa Trevino to Albert Trevino, among others; Exhibit 14, Communication from Albert Trevino.) Resort Legal Team is nothing more than an alter ego of the Trevinos. Albert Trevino also masterminded the original plan, sending an email to Lisa Trevino and William Stewart explaining the initial email to be sent to clients and how the company would "eventually come up [with] an attractive brochure type document" to provide them. Included in Albert Trevino's email and the attachments thereto were "letters of explanation" and instructions for timeshare owners to complete such letters, which suggested the owners may cite financial hardship, medical condition, fixed income, high pressure sales tactics (such as being "held hostage"), and deception as their reasons to seek cancellation of their timeshare contracts.

104. Moreover, Lisa Trevino is the conduit between Resort Legal Team and Tradebloc and personally directs the activities of Resort Legal Team in connection with Tradebloc.

### E.   Defendants' False and Misleading Advertising

105. Defendants' scheme is predicated upon false and/or misleading advertisement that is designed to lure consumers, including Wyndham Customers, into Defendants' scheme.

- 22 -

i.      **Timeshare Owners Relief's Advertisements**

106.    Timeshare    Owners    Relief    primarily    advertises    through    its    website
(www.timeshareownersrelief.com), which has been deactivated. Copies of archived portions of
this website are previously annexed hereto as Exhibit 2 and 3.

107.    Timeshare    Owners    Relief    makes    the    following    false    and/or    misleading
advertisements on its website:

a)

   » Low Cost, Flat Rate, No Haggle Fees
   » Children Won't Inherit
   » Guaranteed Low Prices
   » 100% Money Back Guarantee
   » Stop Annual Fees
   » Cancel Timeshare Mortgages Too

This advertisement is false and/or misleading because the "100% Money Back
Guarantee" is illusory as Timeshare Owners Relief considers a foreclosure to be a
form of "exit" and will refuse to refund money to consumers who have been
foreclosed upon.

b)

Our system is the easiest and most affordable way to get rid of your timeshare. We have created a risk-free solution to all of your timeshare troubles, backed
by our 100% money-back guarantee. Canceling your timeshare shouldn't be difficult, it shouldn't be expensive, and it shouldn't be risky.

This advertisement is false and/or misleading because Timeshare Owners Relief
does not have a "system" and their actions – causing defaults of contracts – is not
"risk-free". This advertisement also repeats the "100% money-back guarantee"
statement, which is false and/or misleading as set forth hereinabove.

c)

**1. Who does Timeshare Owners Relief, LLC provide Timeshare Relief for?**

Our program is for timeshare owners who:

» Are unable to use their timeshare

» Who are concerned about their inability to sell their timeshare through a listing company

» Have been overwhelmed by unexpected increasing Maintenance Fees and Special Assessments

» Are worried about their loved ones inheriting their timeshare and all the fees that go along with it.

» Have become increasingly frustrated with Exchange Companies

» Are looking for more affordable vacation options

» Are widowed, divorced, or simply can no longer travel with their loved ones

» Don't use their timeshare as much as they had originally intended

» No longer able to travel

» Searching for a way out for any reason

This advertisement is false and/or misleading because it states a variety of bases that are not valid grounds for cancellation of a contract such as a Timeshare Contract, for example, "[s]earching for a way out *for any reason*" (emphasis supplied) is not a valid legal argument for termination of a valid and binding contract.

d)

**3. Can Timeshare Owners Relief, LLC help me?**

Timeshare Owners Relief, LLC offers solutions designed to help timeshare owners who no longer use their timeshare, or are interested in eliminating the financial burden of ever increasing fees. Our solutions are also meant to help those who would like to avoid passing ownership of their timeshare, and it's financial burden, on to their children. Whether you currently own your timeshare, or have a mortgage on the property, Timeshare Owners Relief, LLC can help you. To find out how, please call one of our Timeshare Relief experts at **1-800-971-8081** and they can assess your individual situation and help find the best solution for you and your family.

This advertisement is false and/or misleading for the same reasons set forth in subparagraph c, *supra*.

e)

**8. How does Timeshare Owners Relief, LLC help me get rid of my timeshare?**

Timeshare Owners Relief, LLC works with professionally licensed, bonded and insured title agencies to remove your name from the timeshare deed. Depending on the specific property, the title may be transferred via a deed, club membership, lease, assignment, or as required by the covenants, conditions, or restrictions listed in documents governing the resort ownership program.

> This advertisement is false and/or misleading because not only is this *not* how Timeshare Owners Relief conducted business, but, even if they did use "professional licensed, bonded and insured title agents", doing so would have no impact on a timeshare mortgage while Timeshare Owners Relief specifically advertises that they work with consumers with mortgages.

108.  The advertisements set forth in Paragraphs 4, 6, and 77, and Exhibit 2, will hereinafter be referred to as the "Timeshare Owners Relief False And Misleading Advertisements".

**ii.  Resort Legal Team's Advertisements**

109.  Resort Legal Team advertises both through its website (www.resortlegalteam.com) and through direct-to-consumer mailers. A copy of the Resort Legal Team website is annexed hereto as Exhibit 15 while a copy of one of their direct-to-consumer mailers is annexed hereto as Exhibit 16.

110.  Resort Legal Team makes the following false and/or misleading advertisements on its website:

a)

**Our specialists are well informed in all aspects of the industry and are legally bound to give you honest information about your particular situation and to show you what your best options are, including matching you with an attorney who will be retained on your behalf.**

**The attorneys specialize in timeshare law and have successfully released thousands of timeshare owners from unwanted timeshare contracts.**

This advertisement is false and/or misleading because, while Resort Legal Team may, in some instances, refer a Wyndham Owner to an attorney, that attorney is not actually acting as the attorney for the Wyndham Owner.

b)

**Our specialists ascertain exactly the best approach for you to build the case, collecting information about your own personal experience with the timeshare purchase, starting from when you first were sold the timeshare, through how often they tried to upgrade you, to the actual availability and quality of the timeshare itself and whether or not you felt lied to in any part of the process.**

This advertisement is false and/or misleading because Resort Legal Team engages in form work, simply using the same strategy (forcing a foreclosure and hoping Wyndham will negotiate along the way) for all Wyndham Owners.

c)

**Was your presentation longer than the time promised?**
**Were you told that you must buy today because the price will be more tomorrow?**
**Were you not given the time to review the timeshare contract before signing?**
**Were you not told the full extent of the debt you were incurring with interest charges?**
**Were you told your timeshare is a great investment and would increase in value and could be sold for profit?**
**Do you feel trapped in your timeshare because the resort will not take it back or you can't sell it?**

*If you answered* **yes** *to* **ANY** *of the above questions, you may be a victim of fraud and deceptive sales practices.*

**The Qualification**

What qualifies for fraud or deceptive sales practices?

∟ Was your presentation longer than the time promised?
∟ Were you told that you must buy today because the price will be more tomorrow?
∟ Were you not given the time to review the timeshare contract before signing?
∟ Were you not told the full extent of the debt you were incurring with interest charges?
∟ Were you told your timeshare is a great investment and would increase in value and could be sold for profit?
∟ Do you feel trapped in your timeshare because the resort will not take it back or you can't sell it?

if you answered  yes to ANY of the above questions, you may be a victim of  fraud and deceptive sales practices.

These advertisements are false and/or misleading because "feel[ing] trapped in

your timeshare" is a subjective feeling and certainly does not rise to the level of

"be[ing] a victim of fraud and deceptive sales practices" and is not a valid basis

for terminating a legally binding and enforceable contract.

d)

# 1. The Experts

- No Risk/Free Consultation with Specialist
- You retain an Attorney with years of experience specializing in Timeshare Law
- 100% Success or your Money Back by Resort Legal Team

This advertisement is false and/or misleading as Resort Legal Team does not

actually refund any monies to consumers as it considers a foreclosure to be a

"success".

e)

# 2. The Case

- Details about your experience with the timeshare are gathered.
- Documents, notices & contracts are collected.
- Your attorney builds your case and is there for any questions along the way.

This advertisement is false and/or misleading as Resort Legal Team forwards

"cases" to non-lawyers whom it passes off as lawyers, such as Stewart.

f)

Are there any timeshare contracts with any timeshare developers that you cannot help me cancel?

No. There are no timeshare contracts with any timeshare developers we can't 100% guarantee release from. As long as your contract hasn't gone into foreclosure, we can help!

This advertisement is false and/or misleading because Resort Legal Team "100%

guarantee[s]" it can obtain a "release from" *any* timeshare contract from *any*

developer, which is an impossibility as Resort Legal Team has caused Wyndham

Owners to go into foreclosure.

111.    The advertisements set forth in this subsection and Exhibits 15 and 16, will

hereinafter be referred to as the "Resort Legal Team False And Misleading Advertisements."

### iii.    The Alleviate False Advertisements

112.    Alleviate engages in false and/or misleading advertisement both on its website

and through script telephone calls with Wyndham Owners.

113.    On its website, Alleviate falsely and misleadingly includes a Wyndham mark,

falsely and misleadingly implying some sort of affiliation, sponsorship, or approval by

Wyndham when none, in fact, exists.

114.    During telephone calls, Alleviate makes the following false and/or misleading

statements:

a)    that Florida HB 435 makes it a felony to cancel a timeshare contract,

which is false and/or misleading as HB 435 does not make it a felony to *legally* cancel a

timeshare contract;

b)    that Alleviate has a "unique process" to cancel a timeshare contract, which

is false and/or misleading because Alleviate does not have a unique process to cancel a timeshare

contract, it has no legitimate process at all;

c)    that they work with another company to "block a trade line", which is

false and/or misleading because to do so requires making a false claim of identity theft; and

d)    that Wyndham legally has thirty days to respond to a demand letter from

Gallagher-Clifton, which is false and/or misleading because it simply is not true.

115.    The advertisements set forth in this subsection will hereinafter be referred to as the "Alleviate False and Misleading Advertisements."

### iv.    The False and Misleading Advertisements Deceive Consumers

116.    The various advertisements set forth hereinabove have the capacity to deceive, and indeed have deceived the consuming public, including Wyndham Owners.

117.    The Timeshare Owners Relief False And Misleading Advertisements have actually deceived Wyndham Owners, as shown in the consumer complaints annexed hereto as Exhibit 17.

118.    The Resort Legal Team False And Misleading Advertisements have actually deceived Wyndham Owners, as shown in the declaration annexed hereto as Exhibit 18.

### COUNT I
### Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)
#### (Against Timeshare Owners Relief and Stewart)

119.    Wyndham adopts and realleges paragraphs 1 through 118 as if fully set forth herein.

120.    This is an action for violation of the Lanham Act, 15 U.S.C. § 1125(a)(1).

121.    Timeshare Owners Relief willfully, deliberately, and egregiously made false or misleading statements of fact in its commercial advertisements and intended to mislead consumers. The statements described above and incorporated herein, more specifically the Timeshare Owners Relief False and Misleading Advertisements, were literally false, either on their face or by necessary implication, as set forth hereinabove.

122.    Stewart directed and controlled the Timeshare Owners Relief False and Misleading Advertisements.

123.    The Timeshare Owners Relief False and Misleading Advertisements were commercial speech made by a defendant acting in competition to Wyndham by trying to interfere

- 29 -

with Wyndham's business relationships for Timeshare Owners Relief's and Stewart's own financial gain, for the purpose of influencing consumers to retain their services, and were disseminated sufficiently to the timeshare owning public to constitute advertising or promotion within the timeshare industry

124.    Defendants' false or misleading statements either deceived or had the capacity to deceive a substantial segment of the consuming public.

125.    Defendants' deception is material, in that it is likely to influence the consumers' decisions whether to retain Defendants' services or to cease making payments to Wyndham or utilize the Ovation Program, which is available to assist Wyndham Owners who may wish to legitimately terminate their timeshare ownership with Wyndham

126.    Defendants' advertised services affect interstate commerce.

127.    Defendants are operating as competitors to Wyndham. Once a Wyndham Owner enters into an agreement with Timeshare Owners Relief, the sole purpose of that agreement is to cause that Wyndham Owner to withdraw his or her business from Wyndham, effectively converting that individual from a Wyndham Owner to a customer of Timeshare Owners Relief and Stewart.

128.    Wyndham has been and continues to be injured as a result of Defendants' false and misleading statements.

129.    Pursuant to 15 U.S.C. § 1117, Wyndham is entitled to recover (i) its actual damages sustained as a result of the false advertising, (ii) Defendants' profits resulting from their false advertising to Wyndham Owners, and (iii) the costs of the action.

130.    Pursuant to 15 U.S.C. § 1116, Wyndham seeks an injunction upon such terms as the Court may deem reasonable, to prevent further violations by Defendants of 15 U.S.C.

§ 1125(a).

## COUNT II
### Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)
(Against Resort Legal Team and the Trevinos)

131.    Wyndham adopts and realleges paragraphs 1 through 118 as if fully set forth herein.

132.    This is an action for violation of the Lanham Act, 15 U.S.C. § 1125(a)(1).

133.    Resort Legal Team willfully, deliberately, and egregiously made false or misleading statements of fact in its commercial advertisements and intended to mislead consumers. The statements described above and incorporated herein, more specifically the Resort Legal Team False and Misleading Advertisements, were literally false, either on their face or by necessary implication, as set forth hereinabove.

134.    The Resort Legal Team False and Misleading Advertisements were commercial speech made by a defendant acting in competition to Wyndham by trying to interfere with Wyndham's business relationships for Resort Legal Team's own financial gain, for the purpose of influencing consumers to retain their services, and were disseminated sufficiently to the timeshare owning public to constitute advertising or promotion within the timeshare industry

135.    Defendants' false or misleading statements either deceived or had the capacity to deceive a substantial segment of the consuming public.

136.    Defendants' deception is material, in that it is likely to influence the consumers' decisions whether to retain Defendants' services or to cease making payments to Wyndham or utilize the Ovation Program, which is available to assist Wyndham Owners who may wish to legitimately terminate their timeshare ownership with Wyndham

137.    Defendants' advertised services affect interstate commerce.

138.    Defendants are operating as a competitor to Wyndham. Once a Wyndham Owner

enters into an agreement with Resort Legal Team (and the Trevinos), the sole purpose of that agreement is to cause that Wyndham Owner to withdraw his or her business from Wyndham, effectively converting that individual from a Wyndham Owner to a customer of Resort Legal Team (and the Trevinos).

139.   Wyndham has been and continues to be injured as a result of Defendants' false and misleading statements.

140.   Pursuant to 15 U.S.C. § 1117, Wyndham is entitled to recover (i) its actual damages sustained as a result of the false advertising, (ii) Defendants' profits resulting from their false advertising to Wyndham Owners, and (iii) the costs of the action.

141.   Pursuant to 15 U.S.C. § 1116, Wyndham seeks an injunction upon such terms as the Court may deem reasonable, to prevent further violations by Defendants of 15 U.S.C. § 1125(a).

<u>**COUNT III**</u>
**Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)**
(Against Alleviate and Gonzalez)

142.   Wyndham adopts and realleges paragraphs 1 through 118 as if fully set forth herein.

143.   This is an action for violation of the Lanham Act, 15 U.S.C. § 1125(a)(1).

144.   Alleviate willfully, deliberately, and egregiously made false or misleading statements of fact in its commercial advertisements and intended to mislead consumers. The statements described above and incorporated herein, more specifically the Alleviate False and Misleading Advertisements, were literally false, either on their face or by necessary implication, as set forth hereinabove.

145.   The Alleviate False and Misleading Advertisements were commercial speech made by a defendant acting in competition to Wyndham by trying to interfere with Wyndham's

business relationships for Alleviate's own financial gain, for the purpose of influencing consumers to retain their services, and were disseminated sufficiently to the timeshare owning public to constitute advertising or promotion within the timeshare industry

146.    Defendants' false or misleading statements either deceived or had the capacity to deceive a substantial segment of the consuming public.

147.    Defendants' deception is material, in that it is likely to influence the consumers' decisions whether to retain Defendants' services or to cease making payments to Wyndham or utilize the Ovation Program, which is available to assist Wyndham Owners who may wish to legitimately terminate their timeshare ownership with Wyndham

148.    Defendants' advertised services affect interstate commerce.

149.    Defendants are operating as a competitor to Wyndham. Once a Wyndham Owner enters into an agreement with Alleviate (and Gonzalez), the sole purpose of that agreement is to cause that Wyndham Owner to withdraw his or her business from Wyndham, effectively converting that individual from a Wyndham Owner to a customer of Alleviate and Gonzalez.

150.    Wyndham has been and continues to be injured as a result of Defendants' false and misleading statements.

151.    Pursuant to 15 U.S.C. § 1117, Wyndham is entitled to recover (i) its actual damages sustained as a result of the false advertising, (ii) Defendants' profits resulting from their false advertising to Wyndham Owners, and (iii) the costs of the action.

152.    Pursuant to 15 U.S.C. § 1116, Wyndham seeks an injunction upon such terms as the Court may deem reasonable, to prevent further violations by Defendants of 15 U.S.C. § 1125(a).

## COUNT IV
### Contributory False Advertising in Violation of 15 U.S.C. § 1125(a)(1)

(Against Gallagher, Stewart, and Gallagher-Clifton)

153.   Wyndham adopts and realleges paragraphs 1 through 118 and 119 through 152 as if fully set forth herein.

154.   This is an action for a contributory violation of the Lanham Act, 15 U.S.C. § 1125(a)(1).

155.   Timeshare Owners Relief, Resort Legal Team, the Trevinos, Alleviate, Stewart, and Gonzalez willfully, deliberately, and egregiously made false or misleading statements of fact in their commercial advertisements and intended to mislead consumers. The statements described above and incorporated herein were literally false, either on their face or by necessary implication, as set forth hereinabove.

156.   Wyndham has been and continues to be injured as a result of these false and misleading statements.

157.   Gallagher, Stewart, and Gallagher-Clifton have contributed and continue to contribute to this false advertising by knowingly inducing or causing the conduct, or by materially participating in it by providing a necessary element of the false and misleading advertising.

158.   Gallagher, Stewart, and Gallagher-Clifton explicitly or implicitly encourage the false advertising because they permit Defendants to advertise "legal services" and promote Gallagher, Stewart, and Gallagher-Clifton as providing these "legal services" to Wyndham Owners, who are deceived into believing that they are receiving legal representation when they are, in fact, not.

159.   The Timeshare Owners Relief False And Misleading Advertisements, the Resort Legal Team False And Misleading Advertisements, and the Alleviate False and Misleading

- 34 -

Advertisements (collectively the "False Advertisements") are public, serious, and widespread, and Gallagher, Stewart, and Gallagher-Clifton have full knowledge of such advertising and condone it, enable it, and participate in it.

160.    Gallagher, Stewart, and Gallagher-Clifton financially benefit from the False Advertisements in the form of client referrals and fee splitting with Timeshare Owners Relief, Resort Legal Team, and Alleviate which each pass a portion of the fees they take from Wyndham Owners to Gallagher, Stewart, and Gallagher-Clifton.

161.    The revenue generated by Gallagher, Stewart, and Gallagher-Clifton from Wyndham Owners is derived entirely through their reliance on the False Advertisements.

162.    Pursuant to 15 U.S.C. § 1117, Wyndham is entitled to recover (i) its actual damages sustained as a result of the False Advertisements, (ii) Defendants' profits resulting from the false advertising to Wyndham Owners, and (iii) the costs of the action.

163.    Pursuant to 15 U.S.C. § 1116, Wyndham seeks an injunction upon such terms as the Court may deem reasonable, to prevent further contributory violations by Defendants of 15 U.S.C. § 1125(a).

## COUNT V
### Contributory False Advertising in Violation of 15 U.S.C. § 1125(a)(1)
(Against Tradebloc)

164.    Wyndham adopts and realleges paragraphs 1 through 118 and 119 through 152 as if fully set forth herein.

165.    This is an action for a contributory violation of the Lanham Act, 15 U.S.C. § 1125(a)(1).

166.    Timeshare Owners Relief, Resort Legal Team, the Trevinos, Alleviate, Stewart, and Gonzalez willfully, deliberately, and egregiously made false or misleading statements of fact

in their commercial advertisements and intended to mislead consumers. The statements described above and incorporated herein were literally false, either on their face or by necessary implication, as set forth hereinabove.

167.   Wyndham has been and continues to be injured as a result of these false and misleading statements.

168.   Tradebloc has contributed and continues to contribute to this false advertising by knowingly inducing or causing the conduct, or by materially participating in it by providing a necessary element of the false and misleading advertising.

169.   Tradebloc explicitly or implicitly encourages the false advertising because it permits Defendants to advertise credit "block and repair" services and promotes Tradebloc as providing these services to Wyndham Owners, who are deceived into believing that they are receiving lawful credit repair services when they are, in fact, not.

170.   Further, Defendants' false advertising of Tradebloc's "services"—that is, their misrepresentations that consumers' credit will not be affected if they stop paying Wyndham because of Tradebloc—adds to the false narrative that Defendants' "cancellation" services are legitimate.

171.   The False Advertisements are public, serious, and widespread, and Tradebloc has full knowledge of such advertising and condones it, enables it, and participates in it.

172.   Tradebloc financially benefits from the False Advertisements in the form of client referrals and fee splitting with Stewart, Resort Legal Team, and Alleviate which each pass a portion of the fees they take from Wyndham Owners to Tradebloc.

173.   The revenue generated by Tradebloc from Wyndham Owners is derived entirely through their reliance on the False Advertisements.

174.     Pursuant to 15 U.S.C. § 1117, Wyndham is entitled to recover (i) its actual damages sustained as a result of the False Advertisements, (ii) Defendants' profits resulting from the false advertising to Wyndham Owners, and (iii) the costs of the action.

175.     Pursuant to 15 U.S.C. § 1116, Wyndham seeks an injunction upon such terms as the Court may deem reasonable, to prevent further contributory violations by Defendants of 15 U.S.C. § 1125(a).

**COUNT VI**
**Tortious Interference with Contractual Relations**
(Against All Defendants)

176.     Wyndham adopts and realleges paragraphs 1 through 118 as if fully set forth herein.

177.     This is a cause of action for tortious interference with contractual relations against Defendants.

178.     Wyndham has contractual relationships with Wyndham Owners through the Timeshare Contracts.

179.     Defendants have actual, constructive, and/or specific knowledge of the contractual relationships between Wyndham and the Wyndham Owners. The very fact that Wyndham have a business relationship with the Wyndham Owners is the basis upon which Defendants sought to establish a relationship with the Wyndham Owners. Indeed, if it were not for the existence of the contractual relationships between Wyndham and the Wyndham Owners, Defendants would have no reason to market their "timeshare cancellation service".

180.     Defendants, through various inter-related entities as described hereinabove, have successfully solicited Wyndham Owners and caused or induced them to breach and/or terminate their contractual relationships with WVR, WRDC, SV, SVC-West, SVC-Americana, and/or

- 37 -

SVC-Hawaii.

181.    In particular, Defendants have intentionally procured the breach of Wyndham's contractual relationships by soliciting Wyndham Owners and persuading them to hire Defendants to help "cancel" (in reality, breach) their Timeshare Contracts.

182.    Defendants also procure breaches by directly instructing Wyndham Owners to stop paying their timeshare loans and maintenance fees and/or engaging in improper transfers.

183.    Defendants also procure breaches by persuading Wyndham Owners that they do not need to pay on their debts to Wyndham because they are protected by illusory credit "block and repair" services and will suffer no credit consequences if they stop paying.

184.    If Wyndham Owners knew the truth about Defendants' illusory services or about how Defendants' actions would adversely impact them, they would not pay exorbitant fees to Defendants nor unlawfully terminate (through breach resulting in foreclosure) their timeshare interests.

185.    Defendants have utilized improper and/or illegal means to interfere with Plaintiffs' contractual relations.

186.    Defendants' actions were done with an improper motive and not made in good faith, but rather were made with the knowledge and predominant purpose to injure Wyndham or with reckless disregard for the attendant consequences naturally, directly, and proximately resulting from Defendants' actions and without reasonable grounds for Defendants to believe that their actions were justified and proper.

187.    As a direct and proximate result of Defendants' intentional misconduct, Wyndham Owners have terminated, or have baselessly sought to terminate, their contractual relationships with Plaintiffs and, more specifically, WVR, WRDC, SV, SVC-West, SVC-Americana, and/or

SVC-Hawaii before the expiration of the terms of those contracts. These terminations, and attempted terminations, also interfere with Wyndham's ability to enter into subsequent transactions with those same Wyndham Owners.

188.    Defendants did not and do not have any justification or privilege in procuring the breach of such contractual relationships, as Defendants are strangers to the contractual relationships between Wyndham and its Owners, and their interference with Wyndham's business is willful and malicious.

189.    Furthermore, Defendants profit greatly by advertising their "timeshare cancellation service" as including legal representation as well as credit blocking services, thereby receiving significant "fees" from Wyndham Owners.

190.    As a direct and proximate result of the foregoing, Plaintiffs suffered economic damages arising from Wyndham Owners' default of their payment obligations under the Timeshare Contracts.

191.    Plaintiffs are entitled to damages against all Defendants jointly and severally.

192.    Defendants' ongoing conduct has caused and, if not permanently enjoined, will continue to cause irreparable harm to Wyndham in the disruption of customer and other contractual relations; therefore, Wyndham does not have an adequate remedy at law. Accordingly, Wyndham seeks an injunction against Defendants.

193.    Defendants' conduct is intentional and willful and entitles Plaintiffs to an award of punitive damages.

## COUNT VII
### Civil Conspiracy to Commit Tortious Interference with Contractual Relations
(Against All Defendants)

194.    Wyndham adopts and realleges paragraphs 1 through 118 as if fully set forth

herein.

195.    This is a cause of action for civil conspiracy, wherein Defendants have acted in concert to tortiously interfere with Wyndham's contractual relationships with Wyndham Owners.

196.    Defendants are parties to this civil conspiracy. Defendants have a common design to interfere with Wyndham's contractual relationships with Wyndham Owners, each Defendant having the intent, and knowledge of the others' intent, to accomplish by concerted action unlawful purposes and/or lawful purposes by unlawful means.

197.    Defendants have committed various overt acts in furtherance of their conspiracy, including but not limited to, wrongfully soliciting Wyndham Owners through false statements and misrepresentations regarding Defendants' "timeshare cancellation service," misleading Wyndham Owners about the nature of their timeshare interest, soliciting Wyndham Owners to terminate or cancel their Timeshare Contracts with Wyndham, and inducing Wyndham Owners to stop making payments related to their timeshare interest.

198.    Defendants have made agreements to perform separate aspects of this conspiracy in concert, and then divide the compensation generated from this scheme among the Defendants.

199.    Defendants' civil conspiracy has a particularly powerful and coercive effect in that Stewart, who is not a lawyer, Gallagher, who is a lawyer but is not actually representing Wyndham Owners as an attorney, and Gallagher-Clifton, which is not a law firm, directly and indirectly (through Timeshare Owners Relief and Resort Legal Team) solicit Wyndham Owners by stating they are providing legal services when they are in fact not.

200.    Defendants thus operate under the imprimatur of a law firm, while unlawfully evading ethical standards and Rules Regulating the Florida Bar which would limit the direct solicitation of Wyndham Owners as well as preclude the sharing of legal fees with non-lawyers.

201.    The powerful effect of this conspiracy is compounded by the participation of Tradebloc, which allows Defendants to more effectively dupe Wyndham Owners into breaching their contracts with Wyndham by misrepresenting that stopping payment to Wyndham will be free of adverse credit consequences.

202.    As a direct and proximate result of Defendants' acts, Wyndham has suffered economic losses, including damages arising from defaults under the Timeshare Contracts to which Defendants have interfered. Wyndham has suffered these losses in the past, and will continue to suffer such losses in the future.

203.    Defendants' ongoing conduct has caused and, if not permanently enjoined, will continue to cause irreparable harm to Wyndham; therefore, Wyndham does not have an adequate remedy at law. Accordingly, Wyndham seeks an injunction against Defendants.

## COUNT VIII
**Violation of Florida's Deceptive and Unfair Trade Practices Act – Injunctive Relief Only**
(Against All Defendants)

204.    Wyndham adopts and realleges paragraphs 1 through 118 as if fully set forth herein.

205.    This is a cause of action for violation of Fla. Stat. § 501.201 *et seq.*, Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA").

206.    Timeshare Owners Relief, Resort Legal Team, and Alleviate, by advertising, soliciting, offering, and providing their timeshare cancellation scheme to timeshare customers, are engaged in "trade or commerce" as defined under Fla. Stat. § 501.203(8).

207.    Timeshare Owners Relief, Resort Legal Team, and Alleviate have intentionally engaged in deceptive and unfair trade practices in violation of Fla. Stat. § 501.204(1) by

soliciting Wyndham Owners through false and misleading advertising and marketing materials, including but not limited to, the False Advertisements.

208.    Gallagher-Clifton and Tradebloc have participated in the deceptive and unfair trade practices by enabling and participating in the activities of Timeshare Owners Relief, Resort Legal Team, and Alleviate.

209.    Stewart, Gallagher, Gonzalez, and the Trevinos are vicariously liable for the actions and/or omissions of their employees and agents in engaging in these unfair and deceptive trade practices.

210.    Defendants have willfully engaged in said practices for their own commercial advantage when they knew that such practices were unfair, misleading, false, and/or deceptive to Wyndham and Wyndham's Owners.

211.    Moreover, as to Tradebloc, it constitutes a "credit repair organization" under 15 U.S.C. § 1679a(3), in that it uses interstate commerce for the purpose of "improving any consumer's credit record, credit history or credit rating" and "providing advice or assistance to any consumer" concerning their credit record.

212.    In connection with Defendants' scheme, Tradebloc has made misleading statements about consumers' credit reports and engaged in deceptive practices in connection with its services, in violation of 15 U.S.C. § 1679b(a).

213.    Thus, as Tradebloc has violated 15 U.S.C. § 1679, Tradebloc has also committed a *per se* FDUTPA violation, establishing the "deceptive act or unfair trade practice" element of a FDUTPA claim, above and beyond the other unfair and deceptive trade practices outlined above in which all Defendants participated. *See State Farm Mut. Auto. Ins. Co. v. Performance Orthapaedics & Neurosurgery, LLC*, 315 F. Supp. 3d 1291, 1300 (S.D. Fla. 2018) ("A per se

- 42 -

violation is established . . . [if a] statute, rule or ordinance proscribes unconscionable, deceptive, or unfair acts or practices and therefore operates as an implied FDUTPA predicate.").

214.   As a direct and proximate result of all of Defendants' unfair and deceptive trade practices, Wyndham has suffered economic losses.

215.   Wyndham's losses will increase unless Defendants are permanently enjoined from continuing their deceptive and unfair business practices. Accordingly, Wyndham seeks an injunction against Defendants.

216.   Wyndham is entitled to recover its attorney's fees and costs from Defendants under Fla. Stat. §§ 501.2105 and 501.211.

### **Prayer for Relief**

Wherefore, Wyndham respectfully requests the Court enter Final Judgment in its favor and against the Defendants, jointly and severally, for the following:

a)  preliminary injunctive relief as to all Counts;

b)  permanent injunctive relief as to all Counts;

c)  actual damages as to Counts I through VII, including, without limitation, disgorgement of profits;

d)  corrective advertising;

e)  treble damages as to Counts I through V;

f)  attorneys' fees;

g)  costs;

h)  pre- and post- judgment interest; and

i)  such other and further relief as the Court deems appropriate.

Respectfully submitted,

/s/ Alfred J. Bennington, Jr.
**ALFRED J. BENNINGTON, JR., ESQ.**
Florida Bar No. 0404985
bbennington@shutts.com
**GLENNYS ORTEGA RUBIN, ESQ.**
Florida Bar No. 556361
grubin@shutts.com
**CHRISTIAN M. LEGER, ESQ.**
Florida Bar No. 0100562
cleger@shutts.com
**SHUTTS & BOWEN LLP**
300 South Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone: (407) 835-6755
Facsimile: (407) 849-7255

*Attorneys for Plaintiffs*

Dated: June 11, 2020.

ORLDOCS 17543970 5

- 44 -

# Exhibit "2"

# Subpoena to Testify at a Deposition in a Civil Action to Paulino T. Bonds, Sr.'s

# Exhibit "2"

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Middle District of Florida ▾

| | |
|---|---|
| Wyndham Vacation Ownership, Inc., et al. | ) |
| *Plaintiff* | ) |
| v. | ) |
| Charles E. Gallagher, Esq., et al. | ) |
| | ) |
| *Defendant* | ) |

Civil Action No.   6:19-cv-00476-GAP-EJK

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:        Paulino T. Bonds, Sr., a/k/a Pauli Bonds, 11448 Storici St, Las Vegas, NV 89141

*(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: To be conducted remotely via Zoom conference link. Physical location: Regus - Las Vegas - Arroyo Crossing, 7455 Arroyo Crossing Spring Valley, Unit 220, Las Vegas, NV 89113. | Date and Time: Friday, June 25, 2021 at 9:00AM PDT/12:00PM EDT |
|---|---|

The deposition will be recorded by this method:        Zoom Recording and Court Reporter

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   June 9, 2021

| *CLERK OF COURT* | OR | |
|---|---|---|
| | | /s/ Alfred J. Bennington, Jr. |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Wyndham Vacation Ownership, Inc., et al.
_____ , who issues or requests this subpoena, are:
Alfred J. Bennington, Jr., Esq., bbennington@shutts.com, Shutts & Bowen, LLP, 300 S. Orange Ave., Ste. 1600, Orlando, FL 32801, (407) 423-3200

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 6:19-cv-00476-GAP-EJK

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____46.16_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) *Quashing or Modifying a Subpoena.***

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# Exhibit "3"

# Certificate of Non-Appearance of Paulino Bonds, Sr. Transcript

# Exhibit "3"

Paulino Bonds
June 25, 2021

```
1              UNITED STATES DISTRICT COURT
                     Paulino Bonds
                     June 25, 2021
2               MIDDLE DISTRICT OF FLORIDA

3                    ORLANDO DIVISION

4   WYNDHAM VACATION OWNERSHIP, INC.,  )
    a Delaware corporation; WYNDHAM    )
5   VACATION RESORTS, INC.; a          )
    Delaware corporation, WYNDHAM      )
6   RESORT DEVELOPMENT CORPORATION,    )    Case Number
    an Oregon corporation; SHELL       ) 6:19-CV-00476-GAP-EJK
7   VACATIONS, LLC, an Arizona         )
    limited liability company;         )
8   SVC-WEST, LLC, a California        )
    limited liability company;         )
9   SVC-AMERICANA, LLC, an Arizona     )
    limited liability company; and     )
10  SVC-HAWAII, LLC, a Hawaii limited  )
    liability company,                 )
11                   Plaintiff(s),     )
                                       )
12                                     )
        VS.                            )
13                                     )
                                       )
14  CHARLES E. GALLAGHER, ESQ.;        )
    WILLIAM P. STEWART, JR.;           )
15  GALLAGHER-CLIFTON, LLC; TIMESHARE  )
    OWNERS RELIEF, LLC; RESORT LEGAL   )
16  TEAM, INC.; ALLEVIATE CONSULTING,  )
    LLC; CLAYTON ANTHONY GONZALEZ;     )
17  TRADEBLOC, INC.; LISA TREVINO;     )
    and ALBERT TREVINO,                )
18                   Defendant(s).     )
                                       )
19  _____)

20             CERTIFICATE OF NON-APPEARANCE
                OF PAULINO BONDS, SR.
21              FRIDAY, JUNE 25, 2021
                    AT 9:21 A.M.
22              LAS VEGAS, NEVADA

23

24  Reported by:  Laurie Miller, RPR, CLR, NV CCR NO. 971,
                  CA CSR NO. 6457
25                    U.S. LEGAL SUPPORT
                   www.uslegalsupport.com
```

```
 1   APPEARANCES:              Paulino Bonds
                               June 25, 2021
 2
     FOR THE PLAINTIFFS:
 3
         BY:  GLENNYS ORTEGA RUBIN, ESQ.
 4            JUSTIN GREEN, ESQ.
              SHUTTS & BOWEN, LLP
 5            300 South Orange Avenue, Suite 1600
              Orlando, Florida 32801
 6            407.835.6755
              grubin@shutts.com
 7

 8
     FOR DEFENDANTS WILLIAM P. STEWART, JR.,
 9   GALLAGHER-CLIFTON, LLC, and TIMESHARE OWNERS RELIEF,
     LLC:
10
         BY:  ELIZABETH FERGUSON, ESQ.
11            MARSHALL DENNEHEY WARNER COLEMANN & GOGGIN, PC
              200 West Forsyth Street, Suite 1400
12            Jacksonville, Florida 32202
              904.358.4200
13            EBFerguson@MDWCG.com

14
     VIDEOGRAPHER:  CHRISTOPHER BAUGH
15

16

17

18

19

20

21

22

23

24

25              U.S. LEGAL SUPPORT
                www.uslegalsupport.com
```

1          FRIDAY, JUNE 25, 2021, LAS VEGAS, NEVADA
Paulino Bonds
June 25, 2021
2                        9:21 A.M.

3                        --o0o--

4

5          MS. RUBIN:  All right.  Good morning.  This is

6   Glennys Ortega Rubin along with my colleague Justin

7   Green from Shutts & Gonzalez representing the

8   Plaintiffs.

9          Also present is Elizabeth Ferguson representing

10  Defendants Gonzalez and Alleviate.

11         Mr. Charles Gallagher, also a litigant in the

12  litigation, has opted not to attend.

13         For purposes of the record, Mr. Paul Bonds, a

14  third-party witness, was noticed and subpoenaed to

15  testify at deposition today for this time and place and

16  was provided the alternative to appear at a physical

17  location or via Zoom.

18         As Exhibit A I would like to submit the

19  Subpoena to Testify at a Deposition in a Civil Action

20  with the attached to this same exhibit proof of service

21  indicating that Mr. Bonds was properly served with

22  process as noted therein and provided the requisite

23  witness check.

24         Moreover, following him being served with

25  process, I personally attempted to communicate with
U.S. LEGAL SUPPORT
www.uslegalsupport.com

Paulino Bonds
June 25, 2021                                      4

Paulino Bonds
June 25, 2021

1   Mr. Paul Bonds on at least five occasions for purposes
2   of confirming his attendance and in furtherance of this
3   deposition.
4          What is being published as Exhibit 2 herein you
5   will see an e-mail chain starting on Tuesday, June 22nd,
6   2021; June 23, 2021; and then one this morning on
7   June 25th, 2021, all e-mails indicating that we were
8   trying to confirm his attendance and the fact that he
9   was being deposed today.
10         Furthermore and separate and aside from that, I
11  communicated or attempted to communicate with Mr. Bonds
12  via a phone number that I had for him on phone of
13  (609)626-1003.  I placed at least two phone calls to
14  that number and left messages to no avail.
15         It is now 12:23 Eastern Standard Time.  This
16  deposition was set for 12:00 p.m.  It's now 12:23 p.m.,
17  and Mr. Bonds has failed to appear both -- or either via
18  Zoom and remotely or in person.
19         So, with this, this concludes the fact that we
20  will need a certificate of non-appearance for Mr. Bonds
21  who was properly subpoenaed to appear and his failure to
22  appear at this deposition.  Thank you.  Exhibits A
23  and B.
24         (At 9:23 a.m. the proceeding concluded.)
25

1        I, LAURIE MILLER, Certified Court Reporter of

2   the State of Nevada, do hereby certify:

3        That the foregoing proceedings were taken

4   before me at the time and place herein set forth; with

5   all participants appearing remotely; that the witness

6   was duly sworn or affirmed; that the testimony of the

7   witness and all objections made by counsel at the time

8   of the examination were recorded stenographically by me,

9   and were thereafter transcribed under my direction and

10  supervision; and that the foregoing pages contain a

11  full, true and accurate record of all proceedings and

12  testimony to the best of my skill and ability.

13        I further certify that I am neither financially

14  interested in the action nor a relative or employee of

15  any attorney or any of the parties.

16        IN WITNESS WHEREOF, I have subscribed my name

17  this 6th of July, 2021.

18

19

20

21

22  _____

23  LAURIE MILLER, CCR No. 971, RPR, CLR

24

25        U.S. LEGAL SUPPORT
        www.uslegalsupport.com

# Exhibit "A"

# Affidavit of Service of Subpoena to Testify at a Deposition to Paulino T. Bonds, Sr.

# Exhibit "A"

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the
UNITED STATES DISTRICT COURT for the Middle District of Florida

| | |
|---|---|
| Wyndham Vacation Ownership, Inc., et al. | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No. 6:19-cv-00476-GAP-EJK |
| | ) |
| Charles E. Gallagher, Esq., et al. | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:   Paulino T. Bonds, Sr., a/k/a Pauli Bonds

*(Name of person to whom this subpoena is directed)*

☒ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place:<br>To be conducted remotely via Zoom conference link.<br>Physical location: Regus - Las Vegas - Arroyo Crossing,<br>7455 Arroyo Crossing Spring Valley, Unit 220, Las Vegas,<br>NV 89113 | Date and Time:<br>Friday, June 25, 2021 at 9:00AM PDT/12:00PM EDT |
|---|---|

The deposition will be recorded by this method: Zoom Recording and Court Reporter

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: June 9, 2021

*CLERK OF COURT*

OR

_____                    _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Wyndham Vacation Ownership, Inc., et al., who issues or requests this subpoena, are; Alfred J. Bennington, Jr., Esq., bbennington@shutts.com, Shutts & Bowen, LLP, 300 S. Orange Ave., Ste. 1600, Orlando, FL 32801, (407) 423-3200 ,

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a

notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 6:19-cv-00476-GAP-EJK

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* <u>Paulino T. Bonds, Sr., a/k/a Pauli Bonds</u> on *(date)*
<u>June 6, 2021</u>.

[X] I served the subpoena by delivering a copy to the named individual as follows: <u>Spoke with subject's wife, who</u>
<u>said subject was unavailable but willingly accepted service on his behalf.</u> on *(date)* <u>Sat, Jun 12 2021</u>; or

[ ] I returned the subpoena unexecuted because: _____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to
the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ <u>46.16</u>.

My fees are $ _____ for travel and $ _____ for services, for a total of $
_____ .

I declare under penalty of perjury that this information is true.

Date: 06/14/2021

_____
*Server's signature*

Adam Schwartz R-2021-06049
_____
*Printed name and title*

16691 Gothard Street, Suite D Huntington Beach, CA 92647
_____
*Server's address*

Additional information regarding attempted service, etc.:
1) Unsuccessful Attempt: Jun 10, 2021, 5:13 pm PDT at 3722 Keltie Brook Dr, Las Vegas, NV 89141
Spoke with subject's wife, Denise, who confirmed Paulino lives at residence. She said that he currently isn't home. She could
not provide a good time he would be home, he comes and goes all the time. She asked for my card and said she would him
call me. White BMW 320i parked on driveway with NV tag 865F19.

2) Successful Attempt: Jun 12, 2021, 11:53 am PDT at 3722 Keltie Brook Dr, Las Vegas, NV 89141 received by Denise
"Doe". Age: 56; Ethnicity: African American; Gender: Female; Weight: 140; Height: 5'5"; Hair: Gray; Relationship: Wife;
Spoke with subject's wife, who said subject was unavailable but willingly accepted service on his behalf.

# Exhibit "B"

# Communication e-mail to Pauli Bonds Re: Deposition

# Exhibit "B"

**Glennys Ortega Rubin**

| | |
|---|---|
| **From:** | Glennys Ortega Rubin |
| **Sent:** | Friday, June 25, 2021 10:41 AM |
| **To:** | 'paulbonds@icloud.com' |
| **Cc:** | Danielle M. Reyes |
| **Subject:** | RE: Charles Gallagher/Wyndham Litigation - Deposition (TODAY) |
| | |
| **Importance:** | High |

Good morning Mr. Bonds –

This is my fifth attempt to confirm your attendance at your deposition, pursuant to a properly served third party subpoena for deposition in the Wyndham/Gallagher litigation.  (As an aside, and at the time of service, you were also provided the Zoom information for the deposition, which is schedule for 12PM EST today.)  This is my third email to you (the two prior emails are copied below) and I have also called you twice, to no avail.  I will see you at noon for your deposition.

Thank you, GOR



**Glennys Ortega Rubin**
*Partner*

**Shutts & Bowen LLP**
300 South Orange Avenue, Suite 1600 | Orlando, FL 32801
Direct: (407) 835-6757 | Fax: (407) 425-8316
E-Mail | Biography | V-Card | Website

**From:** Glennys Ortega Rubin
**Sent:** Wednesday, June 23, 2021 3:26 PM
**To:** 'paulbonds@icloud.com' <paulbonds@icloud.com>
**Cc:** Danielle M. Reyes <DReyes@shutts.com>
**Subject:** RE: Charles Gallagher/Wyndham Litigation - Deposition and Related Matters

Mr. Bonds -  Following up on my email below.  Would you be available to speak with us tomorrow in advance of your deposition?  Also – please confirm that you will be in attendance at your deposition on Friday.  Please reach out and I will make myself available.  Thank you, GOR

**Shutts**

**Glennys Ortega Rubin**
*Partner*

1

**Shutts & Bowen LLP**

300 South Orange Avenue, Suite 1600 | Orlando, FL 32801
Direct: (407) 835-6757 | Fax: (407) 425-8316
E-Mail | Biography | V-Card | Website


**From:** Glennys Ortega Rubin
**Sent:** Tuesday, June 22, 2021 10:28 AM
**To:** 'paulbonds@icloud.com' <paulbonds@icloud.com>
**Cc:** Danielle M. Reyes <DReyes@shutts.com>
**Subject:** Charles Gallagher/Wyndham Litigation - Deposition and Related Matters

Good morning Mr. Bonds.

I am in the process of preparing for the taking of your deposition this Friday and wanted to speak with you in advance.  Rest assured that our focus for the deposition is Mr. Gallagher, not you.  Please let us know your availability to discuss today or tomorrow.  Due to the impending deposition, this is time sensitive.

We look forward to hearing back from you and to speaking with you.  Thanks, GOR



# Shutts

**Glennys Ortega Rubin**
*Partner*

**Shutts & Bowen LLP**

300 South Orange Avenue, Suite 1600 | Orlando, FL 32801
Direct: (407) 835-6757 | Fax: (407) 425-8316
E-Mail | Biography | V-Card | Website